**Mohamed NASR, Plaintiff,**

v.

**CONNECTICUT GENERAL LIFE INSURANCE COMPANY and Shaklee Corporation, Defendants.**

**No. 85 C 1830.**

United States District Court,
N.D. Illinois, E.D.

March 10, 1986.

John W. Quinn, Churchill, Baumgartner & Phillips, Ltd., Grayslake, Ill., for plaintiff.

Richard J. Jacobson, James T. Otis and Weston W. Hanscom, Keck, Mahin & Cate, Chicago, Ill., for Connecticut General Life Ins. Co.

Donald A. Mackay and Stephen C. Carlson, Sidley & Austin, Chicago, Ill., for Shaklee Corp.

## ORDER

NORGLE, District Judge.

Plaintiff, Mohamed Nasr, a physician, has filed a two-count complaint against defendants Connecticut General Life Insurance Company ("Connecticut General") and Shaklee Corporation ("Shaklee") for defamation and interference with prospective advantage and for interference with prospective advantage respectively. Shaklee has answered the complaint. Connecticut General moves to dismiss both counts for failure to state a claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(6).

The facts as stated in the complaint, which we must take as true for purposes of this motion, are these: plaintiff has been a practicing physician specializing in internal medicine, cardiology, and nutrition since 1976. One of his patients was insured by Connecticut General. Upon receipt of the claim from the insured, agents of the de-

fendants made at least four allegedly defamatory statements to the patient:

1) Dr. Nasr is a quack;
2) Dr. Nasr has a "racket going on there;"
3) The treatment prescribed was ineffective;
4) Dr. Nasr was under investigation.

As a result of these statements, plaintiff alleges that his good reputation as a physician has been damaged and that he has lost patients. Plaintiff also alleges that Connecticut General and Shaklee conspired to cause employees of Shaklee to cease seeing Dr. Nasr for treatment. The actions of defendants allegedly injured plaintiff's prospective practice.

The court first addresses defendant's motion to dismiss the defamation count. Special damages resulting from defamatory statements must be pled with specificity. Fed.R.Civ.P. 9(g). *Brown and Williamson Tobacco Corp. v. Jacobson,* 713 F.2d 262, 270 (7th Cir.1983); *Paul v. Premier Electrical Const. Co.,* 581 F.Supp. 721, 724 (N.D.Ill.1984). Plaintiff has stated only a general allegation of harm resulting from loss of business and reputation. Nowhere does the complaint explicitly identify a specific pecuniary loss. Thus, the complaint can only be one for slander *per se,* that is slander which is "so obviously and naturally hurtful to the person aggrieved that proof of [its] injurious character can be, and is, dispensed with." *American Pet Motels, Inc. v. Chicago Veterinary Medical Ass'n,* 106 Ill.App.3d 626, 629, 62 Ill. Dec. 325, 328, 435 N.E.2d 1297, 1300 (1982).

There are four categories of statements which are slander *per se:* statements which impute (1) commission of a criminal offense, (2) infection with a communicable disease which would exclude one from society, (3) inability to perform or want of integrity in the discharge of office or employment, and (4) words prejudicing a person in his profession or trade. *Id.; Fried v. Jacobson,* 107 Ill.App.3d 780, 63 Ill.Dec. 564, 438 N.E.2d 495 (1982).

In Illinois, allegedly defamatory statements are subjected to the innocent construction rule. According to the Illinois Supreme Court,

[A] written or oral statement is to be considered in context, with the words and the implication therefrom given their natural and obvious meaning; if, as so construed, the statement may reasonably be innocently interpreted or reasonably be interpreted as referring to someone other than the plaintiff it cannot be actionable *per se. Chapski v. Copley Press,* 92 Ill.2d 344, 352, 65 Ill.Dec. 884, 888, 442 N.E.2d 195, 199 (1982).

Whether a statement may reasonably be innocently construed is a question of law. *Action Repair, Inc. v. American Broadcasting Co.,* 776 F.2d 143, 145 (7th Cir. 1985). Only if it is not reasonably capable of innocent construction will the question be given to a fact-finder to determine whether it was so understood. *Id.; see also Spelson v. CBS, Inc.,* 581 F.Supp. 1195, 1201 (N.D.Ill.1984), *aff'd,* 757 F.2d 1291 (7th Cir.1985).

Connecticut General seeks dismissal explicitly on two grounds and impliedly on a third. Connecticut General claims the statements made were merely opinion, which is nonactionable; were capable of an innocent construction, and therefore, were not defamatory; and were privileged. On a Rule 12(b)(6) motion disputes as to whether a statement is defamatory should be resolved in favor of the nonmovant. *Action Repair,* 776 F.2d at 149. "[C]ourts should not make 'judgment calls' about the defamatory capacity of allegedly libelous statements at issue because information on the pleadings alone is rarely sufficient." *Id.*

Defendant contends the statement that Dr. Nasr is a quack is an opinion. Given the context in which it arose, defendant argues, it can not become an assertion of fact. Connecticut General cites *Spelson* as supporting its position that references to quackery are opinions protectable by the first amendment and the Illinois common law privilege of fair comment. The court disagrees.

While the line separating opinion and fact is not a precise one, *Catalano v. Pechous,* 69 Ill.App.3d 797, 25 Ill.Dec. 838, 847, 387 N.E.2d 714, 723 (1979), it is discernible. Expression of honest opinions are protected by the first amendment. *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 339–40, 94 S.Ct. 2997, 3006–07, 41 L.Ed.2d 789 (1974). Moreover, the common law privilege of fair comment protects opinions that relate to an individual's acts, is fair in the sense that the reader can see a basis for the comment and draw his own conclusions, and relates to a matter of public interest. *Catalano,* 69 Ill.App.3d at 797, 25 Ill.Dec. at 838, 387 N.E.2d at 714. An assertion of fact or a negative evaluation of conduct by the plaintiff is actionable if defamatory. *Id.; Catalano,* 83 Ill.2d 146, 50 Ill.Dec. 242 at 250, 419 N.E.2d 350 at 358 (1980) (cases analyzing opinion/fact dichotomy). The analysis seems to turn on whether the assertion is capable of disproof or whether it was only made in a "loose, figurative sense." *Id.*

Connecticut General's statements that Dr. Nasr is under investigation, prescribed ineffective treatment, and has a racket going on there are clear statements of fact, subject to disproof. The statement that Dr. Nasr is a quack is more arguable. The court finds that this term was not used in a loose, figurative sense to express displeasure at the treatment or filing of the claim. It asserts a statement that Dr. Nasr is incompetent in his profession.

The decision in *Spelson* does not help Connecticut General. In *Spelson,* the court considered statements made as part of an investigation into physicians involved in "cancer quackery." Plaintiff was one of the individuals investigated. The essence of the report was that chiropractors were treating cancer with drugs, and the clear implication was that the physicians were "cashing in on 'phony cancer prevention programs'" by exploiting cancer victims' fears. The court concluded the statements were not defamatory but were expressions of commentary on "an inexact science in which numerous and widely varied approaches and philosophies exist." *Spelson,* 581 F.2d at 1201. In finding the alleged

defamatory statements nonactionable, the court noted the statements amounted to "no more than an expression of opinion and commentary gleaned from intensive investigations and stated facts. The broadcasts clearly present the facts from which the opinions are derived and in so doing, allow for the possibility that an individual viewer could reach a different conclusion regarding the value of the practices which constitute the subject of the investigation." *Id.* at 1203. *See generally* 3 *Restatement (Second) of Torts* § 566 comments a–c (1976) ("If the defendant expresses a derogatory opinion without disclosing the facts on which it is based, he is subject to liability if the comment creates the reasonable inference that the opinion is justified by the existence of unexpressed defamatory facts.")

■ The occurence giving rise to the present action is entirely different. The alleged defamatory statements were directed not at any specific acts of Dr. Nasr but at his integrity and capability as a physician. Moreover, the additional statement that Dr. Nasr has a "racket going on there" calls into question the professionalism of his entire practice. Connecticut General did not provide the factual basis, if any, for its assertion of quackery. Dr. Nasr's patient was thus deprived of an opportunity to draw his own conclusions regarding the disputed treatment. The defendant's conclusory statement that Dr. Nasr was "under investigation" provided credence to its charges without informing Dr. Nasr's patients of the basis of the investigation. Given these factual circumstances surrounding the statements of Connecticut General (the refusal to honor a claim made by its insured) and the stated purpose (Dr. Nasr's treatment was ineffective), this court cannot conclude that its assertion that Dr. Nasr was a quack was simply an honest opinion; it was an assertion of fact, capable of disproof, actionable for defamation.

■ Statements of fact must be defamatory, however, to be actionable. Dr. Nasr

alleges the statements were actionable *per se* because they suggest a want of integrity or ability in the discharge of the duties of his employment or because they suggest a want of ability in the performance of his business, trade or profession. It is not seriously disputed that defendant's statements pertain directly to Dr. Nasr's ability and integrity in carrying on his profession and practice.

■ What is disputed is the application of the innocent construction rule to the four statements. Connecticut General argues the four statements can be reasonably innocently construed and therefore the statements cannot be actionable *per se.* Connecticut General argues the term "racket" is unobjectionable; that it merely means an easy and lucrative means of livelihood, and as such is non-defamatory. It repeats its argument that the statement that Dr. Nasr is a quack is protected opinion as is the statement that Dr. Nasr's treatment was ineffective. Furthermore, the defendant argues the assertion that Dr. Nasr is under investigation is non-defamatory in that it might mean anything; because it might mean anything, a reasonably innocent constructions is possible. Defendant asks too much.

The Illinois Supreme Court, in *Chapski v. Copley Press, Inc.,* 92 Ill.2d 344, 65 Ill.Dec. 884, 442 N.E.2d 195 (1982), expressly rejected the interpretation of the innocent construction rule defendant now asks this court to adopt. "The principal criticism of the rule seems to be that ... Courts generally strain to find unnatural but possibly innocent meanings of words where such a construction is clearly unreasonable and a defamatory meaning is far more probable." *Id.* at 350–351, 65 Ill.Dec. 887, 442 N.E.2d 198.

To the ordinary person a reference to a physician as a quack can have only one connotation. When that reference is followed by the further statement that the physician has a "racket going on" in his practice, the meaning becomes clear: the physician is not very capable and he is placing financial or other considerations ahead of his medical judgment. Moreover, when he is "under investigation" and recommends "ineffective treatment" the picture is complete. The physician is incompetent and we are on to his scheme. The we, in this instance, is the insurance company. When an insurer objects to a claim made by an insured and the stated basis is that the treating physician is under investigation, the probable explanation is that there has been wrongdoing of some kind on the part of the physician. When that allegation is coupled with the charge of ineffective treatment in the particular case and a broad allegation of incompetency, the defamatory meaning is clearly the probable one.

Finally, without explicitly stating so, defendant argues a common law privilege in making the allegedly defamatory statements. Defendant mistakenly cites the first amendment as the basis for the privilege. Outside of the issue of the protection of the expression of opinion, discussed earlier, the first amendment provides no protection and raises no constitutional issues. Connecticut General comes closer to a defense when it characterizes plaintiff's position as an "assertion that while an insurance company may question claims for medical services on the grounds that the services are outside of accepted medical practice, such a basis for questioning coverage can never be communicated to the insured." *Defendant's Reply Memorandum* at 4. This assertion, albeit a vague and imprecise one, raises an issue of the common law privilege.

The common law privilege is a conditional one. For Defendant's statement to come within the conditional privilege defendant must have acted in good faith, in defense of an interest to be protected or a duty to be upheld, and the statement must be limited in scope to that purpose. The publication must be on a proper occasion, in the proper manner, and limited to the proper parties. *American Pet Motels,* 106 Ill. App.3d at 630, 62 Ill.Dec. at 329, 435 N.E.2d at 1301.

Defendant has a legitimate interest in investigating claims made against insurance coverage and in rejecting claims where it finds the treatment is unjustified or not covered by the policy's terms. That does not mean that the insurer may relate any suspected accusations to a patient of Dr. Nasr. Comments on specific findings regarding particular treatment and a refusal to honor a claim may be privileged. Broad statements imputing a lack of ability or integrity to a physician's patients exceed the limited purpose Connecticut General may have had in investigating a claim or in refusing to honor it.

In summary, the statements of defendants were factual, were defamatory *per se*, and were not privileged. Connecticut General's motion to dismiss the defamation count is denied. *See also Spencer v. Comm. Hosp. of Evanston*, 87 Ill.App.3d 214, 42 Ill.Dec. 272, 408 N.E.2d 981 (1980).

Connecticut General also seeks a dismissal of the tortious interference with prospective advantage claim. To state a claim for interference with prospective advantage plaintiff must allege and ultimately prove 1) a reasonable expectancy of entering into a valid business relationship, and 2) purposeful 3) interference by defendant which defeats the expectancy, 4) thereby causing harm to plaintiff. *Schott v. Glover*, 109 Ill.App.3d 230, 235, 64 Ill. Dec. 824, 828, 440 N.E.2d 376, 380 (1982); *see also Futurevision v. Dahl*, 139 Ill. App.3d 61, 65, 93 Ill.Dec. 683, 687, 487 N.E.2d 127, 131 (1985). Plaintiff has alleged that Connecticut General conspired with Shaklee Corp. to cause Shaklee's employees to cease using plaintiff for medical treatment. Specifically plaintiff alleges that defendant circulated letters to Shaklee's employees which questioned Dr. Nasr's qualifications to practice medicine, unreasonably refused to honor or process claims, made statements to patients of plaintiff suggesting his fees were exorbitant, and made and circulated statements that plaintiff was not licensed to practice medicine. Plaintiff further alleges that defendants were aware that plaintiff had treated numerous employees of Shaklee, knew that the statements were false and were done with the intent to injure plaintiff. Plaintiff has stated a claim for interference with prospective advantage.

Connecticut General cites the Seventh Circuit's opinion in *Brown & Williamson* as holding that a plaintiff may not maintain both a toritous interference with prospective advantage count and a defamation count against a corporation. This court does not read the Seventh Circuit's opinion as so holding. In *Brown & Williamson*, the court noted:

> Any libel of a corporation can be made to resemble in a general way this archetypal wrongful-interference case, for the libel will probably cause some of the corporation's customers to cease doing business with it. ... But this approach would make every case of defamation of a corporation actionable as wrongful interference, thereby enabling the plaintiff to avoid the specific limitations [of the law of defamation]. *Brown & Williamson*, 713 F.2d at 274.

Defendant's reading of this language is far too broad; nonetheless, it is not controlling in this case. First we are not faced with a corporate plaintiff; nor do we have a media defendant (which limits the possible first amendment implications). Second, unlike the complaint in *Brown & Williamson*, the complaint here specifically alleges intentional interference with the prospective business of plaintiff. Finally, plaintiff has alleged additional acts, above and beyond the basis for the defamation count, which place the prospective advantage count on a separate, independent footing. *Brown & Williamson* does not require dismissal of the second count. Connecticut General's motion to dismiss Count II is denied.

IT IS SO ORDERED.