ROBERT H. MITTELMAN, Plaintiff-Appellant, v. JOHN J. WITOUS *et al.*, Defendants-Appellees.

First District (3rd Division) No. 86—1409

Opinion filed May 18, 1988.—Rehearing denied July 18, 1988.

RIZZI, J., dissenting.

Robert H. Mittelman, of Chicago, appellant *pro se*.

Baker & McKenzie, of Chicago (Francis D. Morrissey, Thomas F. Bridgman, Paul B. O'Flaherty, Jr., and Michael J. Wagner, of counsel), for appellees.

JUSTICE FREEMAN delivered the opinion of the court:

Plaintiff, Robert Mittelman, appeals the circuit court of Cook County's denial of his motion to vacate the dismissal of his first-amended complaint for slander *per se*, and intentional and willful interference with his "prospective business relationship and contractual expectancy" with the law firm of Clausen, Miller, Gorman, Caffrey, and Witous, P.C. (Clausen Miller), and for leave to file a second-amended complaint against defendants, John J. Witous and James T. Ferrini.

The following facts are taken from plaintiff's first-amended complaint, the well-pleaded allegations of which were taken as true for purposes of defendants' motion to dismiss. Plaintiff was an associate

attorney at Clausen Miller at the time the events leading to this litigation arose. Defendants Witous and Ferrini are attorneys and were members of Clausen Miller's board of directors at that time. In January 1979, Witous assigned plaintiff to prepare for trial two insurance subrogation actions, generally known as the Kerr-McGee cases, which were pending in a Mississippi State court. Witous retained ultimate responsibility for both cases. The cases had been filed in a Mississippi State court in July and November 1978. Certain defendants in the July 1978 action interposed the six-year Mississippi statute of limitations as an affirmative defense. No defendant in the November 1978 action interposed the defense. In April 1982, the defendants in the November 1978 action moved for leave to raise the statute of limitations as an affirmative defense and the defendants in both cases moved for dismissal on the basis of a 1969 Mississippi Supreme Court case, *M. T. Reed v. Jackson Plating Co.* (1969), 222 So. 2d 838, which they had recently discovered. The Mississippi court granted the motions. On or about that date, as plaintiff alleged in his first-amended complaint, Witous stated to Ferrini and other members of Clausen Miller's board of directors that plaintiff "sat" on the statute of limitations defense with knowledge of *M. T. Reed* for three years and as a result cost the firm a considerable amount of money. The firm had taken the Kerr-McGee cases on a contingent fee basis.

Count I of plaintiff's first-amended complaint further alleged that Witous' statement was false and was intended to injure plaintiff by causing criticism properly directed to Witous to be deflected to plaintiff, to Witous' advantage and plaintiff's detriment. Count I also alleged that Witous' statement was intended to and did damage and cause harm to plaintiff's professional reputation. Count II alleged that Witous' statement caused or contributed to the firm's decision to terminate plaintiff's employment, which had been of indefinite duration, and that Witous thus wilfully and intentionally interfered with plaintiff's prospective business relation and contractual expectancy. Count III alleged that, after Ferrini informed him of Witous' statement, plaintiff told Ferrini the true facts. It further alleged that, although Ferrini owed plaintiff a duty to take reasonable steps to protect plaintiff's professional reputation and to prevent further injury to him and although Ferrini informed Witous and others of the true facts, Ferrini and Witous conspired to withhold those facts from the remaining members of the board of directors. Count III lastly alleged that Ferrini thus breached his duty to plaintiff, adopted Witous' statement as his own and intentionally and wilfully interfered with plaintiff's prospective business relation and contractual expectancy.

Pursuant to defendants' motion to dismiss plaintiff's complaint, the trial court struck count I on the basis of the innocent-construction rule. The court reasoned, *inter alia*, that Witous' statement was so unclear and nebulous that it was open to all kinds of interpretations and that nothing in the complaint indicated that Witous meant plaintiff should have dismissed the Kerr-McGee cases before the statute of limitations defenses were raised. The court also concluded that a qualified privilege did not "come into play" in ruling on count I. However, it did state that, if it did, Witous' alleged motive in making the statement, *i.e.*, to deflect criticism from himself to plaintiff, would be an insufficient allegation of the ill will or malice required to overcome the privilege. The trial court struck count II on the basis of the privilege. As plaintiff's counsel conceded, the qualified privilege which precluded liability for defamation also precluded Witous' liability for tortious interference with the contract. The trial court also struck count III, based on plaintiff's counsel's further concession that count III could not stand based on the court's application of the innocent-construction rule to count I. Finally, because there had already been two complaints filed, the trial court dismissed the action and informed plaintiff's counsel of his right to move to vacate that final order within 30 days as long as he tendered a second-amended complaint with the motion.

Plaintiff's proposed second-amended complaint alleged certain facts in addition to those alleged in the first-amended complaint. Count I additionally alleged: (1) when plaintiff first reviewed the files after assignment of the Kerr-McGee cases to him in January 1979, he noted a legal memorandum from local counsel in Mississippi stating that the statute of limitations was not a problem in the case filed in July 1978; (2) plaintiff reviewed the law cited in the memorandum and concluded that it supported the memorandum's conclusion; (3) settlement overtures were rejected after consultation with Clausen Miller's clients in the Kerr-McGee cases; (4) plaintiff kept Witous informed of his activities on the cases from January 1979 to April 1982; (5) after the Kerr-McGee defendants filed the April 1982 motions, plaintiff told Witous that he was not aware of a possible problem with the statute of limitations until the presentation of those motions; (6) at that time, plaintiff also advised Witous, Ferrini and others that, in his opinion, *M. T. Reed* was directly on point with the Kerr-McGee cases; (7) on or about September 3, 1982, the date of dismissal of the Kerr-McGee cases, Witous, Ferrini and other members of Clausen Miller's board of directors discussed the firm's financial situation, "including a serious cash flow problem"; (8) in the course of this discussion, Witous was

criticized for his handling of the Kerr-McGee cases because, *inter alia*, their dismissal would cost the firm a considerable amount of money and thus exacerbate its financial crisis; (9) at that time, to deflect that criticism from himself to plaintiff and make plaintiff the scapegoat for the problem, Witous stated the waste of time and money in preparing the Kerr-McGee cases was not his fault but that of plaintiff, who "sat" on the statute of limitations defense with knowledge of *M. T. Reed* and its applicability for three years without attempting to settle in order to cut the firm's probable losses; (10) the statement was false, Witous knew it was false "or had no reasonable basis for believing it to be true" and "was made maliciously, with an evil motive to injure plaintiff without just cause or excuse."

Plaintiff's second-amended complaint also contained a new count II for slander *per quod* against Witous based on the same statement as count I. Plaintiff realleged counts II and III of the first-amended complaint as counts III and IV of the second-amended complaint.

In denying plaintiff's motions to vacate the dismissal of the first-amended complaint and for leave to file the second-amended complaint, the trial court concluded that plaintiff's new count I added nothing to the cause of action for defamation *per se* and that, as a matter of law, Witous' statement could reasonably be interpreted innocently, *i.e.*, as nondefamatory. The trial court further concluded that plaintiff's new count II was also insufficient as a matter of law under the innocent-construction rule. The trial court concluded that there was nothing substantively different in plaintiff's new count III in comparison to the prior pleading and that plaintiff's allegations of malice were still insufficient to overcome the qualified privilege which applied to Witous' statement. Finally, the court concluded that, as to plaintiff's new count IV, Ferrini did not have the duty alleged by plaintiff.

Opinion

■ Preliminarily, because it is the duty of a reviewing court to consider its jurisdiction and to dismiss an appeal where jurisdiction is lacking (*Archer Daniels Midland Co. v. Barth* (1984), 103 Ill. 2d 536, 539, 470 N.E.2d 290) and because the procedural history of this case may cause some doubt as to the appealability of the trial court order from which plaintiff appeals, we address that question *sua sponte*. Unlike a trial court's nonfinal and nonappealable orders merely dismissing a complaint and denying a motion to reconsider that dismissal (*Ben Kozloff, Inc. v. Leahy* (1986), 149 Ill. App. 3d 504, 501 N.E.2d 238), we believe it is beyond preadventure that both the order deny-

ing the motion to vacate and the order granting the motion to dismiss the first-amended complaint were final and appealable.

The dismissal order provides that "plaintiff's action is dismissed in all its counts." It was thus final and appealable under those cases holding that orders dismissing a plaintiff's "cause," "cause of action," or "claim," as opposed to a "complaint," are final and appealable. (See *Kita v. YMCA* (1964), 47 Ill. App. 2d 409, 198 N.E.2d 74; *Bates v. Ulrich* (1976), 38 Ill. App. 3d 203, 347 N.E.2d 286; *Williams v. A. E. Staley Manufacturing Co.* (1980), 80 Ill. App. 3d 981, 400 N.E.2d 724, *rev'd on other grounds* (1981), 83 Ill. 2d 559, 416 N.E.2d 252; *Robertson v. Robertson* (1984), 123 Ill. App. 3d 323, 462 N.E.2d 712.) Notwithstanding that plaintiff failed to appeal that order but chose, instead, to file a motion to vacate it, the order denying that motion was also final and appealable inasmuch as it terminated the litigation between the parties. See *Sanford v. Thompson* (1947), 397 Ill. 353, 74 N.E.2d 534; *Classen v. Ripley* (1950), 407 Ill. 350, 95 N.E.2d 454; *Commonwealth Loan Co. v. Baker* (1968), 40 Ill. 2d 506, 240 N.E.2d 682; *Johnson v. Empire Mutual Insurance Co.* (1979), 70 Ill. App. 3d 780, 388 N.E.2d 1042.

■ Proceeding now to the merits of this appeal, we first note that a trial court's decision whether to allow amendment of pleadings rests within its sound discretion and will not be disturbed absent an abuse of that discretion. The test of abuse is whether the decision furthers the ends of justice. (*Swaw v. Ortell* (1984), 137 Ill. App. 3d 60, 74, 484 N.E.2d 780.) Specific factors in that determination are whether the proposed amendment would cure the defective pleading, whether the opponent would be surprised or prejudiced by allowing the amendment and whether previous amendments had been allowed. *Hoffman v. Nustra* (1986), 143 Ill. App. 3d 259, 265, 492 N.E.2d 981.

■■ In order to determine whether plaintiff's second-amended complaint cured the defects found by the trial court in his prior pleadings, we must keep in mind the standards relevant to defamation claims. Preliminarily, we note that all distinctions between libel and slander have been abolished in Illinois, except as to whether the alleged defamation was written or spoken. *Mitchell v. Peoria Journal-Star, Inc.* (1966), 76 Ill. App. 2d 154, 159, 221 N.E.2d 516.

■■ ■ To be defamatory *per se*, "words themselves, without the aid of extrinsic facts to explain them," must be "so obviously and inevitably hurtful" that damage is presumed. (*Zeinfeld v. Hayes Freight Lines, Inc.* (1968), 41 Ill. 2d 345, 348, 243 N.E.2d 217.) Four types of words are considered defamatory *per se* in Illinois, those: (1) imputing the commission of crime; (2) imputing infection with a communicable

disease of any kind which would result in exclusion from society; (3) imputing inability to perform or want of integrity in the discharge of duties of office or employment; (4) prejudicing a person in his profession or trade. (*Britton v. Winfield Public Library* (1981), 101 Ill. App. 3d 546, 548, 428 N.E.2d 650.) Clearly, the third and fourth type of defamation *per se* were applicable to count I of plaintiff's amended complaints. To state a claim for libel *per quod,* on the other hand, a plaintiff must plead an innuendo, *i.e.,* defamatory meaning of otherwise ambiguous words, and special damages. See *Renard v. Columbia Broadcasting System, Inc.* (1984), 126 Ill. App. 3d 563, 566, 467 N.E.2d 1090, *cert. denied* (1985), 471 U.S. 1116, 86 L. Ed. 2d 259, 105 S. Ct. 2358; 33A Ill. L. & Prac. *Slander & Libel* 94-96, 100-102 (1970).

■ The innocent-construction rule is, in pertinent part, "that a written or oral statement is to be considered in context, with the words and the implications therefrom given their natural and obvious meaning; if, as so construed, the statement may reasonably be innocently interpreted *** it cannot be actionable *per se.*" (*Chapski v. Copley Press* (1982), 92 Ill. 2d 344, 352, 442 N.E.2d 195.) This preliminary determination is a question of law to be resolved by the trial court in the first instance and whether the statement was in fact, *inter alia,* understood to be defamatory is a jury question if the trial court resolves the initial determination in the plaintiff's favor. *Chapski,* 92 Ill. 2d 344.

■ Applying these principles here, we believe the trial court abused its discretion in denying plaintiff leave to file a second-amended complaint. We disagree with the trial court that the second-amended complaint did not cure the defects in the prior complaints. Specifically, we do not believe that Witous' statement, as alleged in the second-amended complaint, may reasonably be interpreted innocently as a matter of law. That statement was that the waste of time and money in preparing the Kerr-McGee cases was not Witous' fault but that of plaintiff, who sat on the statute of limitations defense with knowledge of *M. T. Reed* and its applicability for three years without attempting to settle to cut the firm's probable losses. In stark contrast to this statement is the statement attributed to Witous in the first-amended complaint that plaintiff sat on the statute of limitations defense with knowledge of *M. T. Reed* for three years and as a result cost Clausen Miller, which had taken the Kerr-McGee cases on a contingent fee basis, a considerable amount of money.

■ Even a cursory reading of the two statements reveals, contrary to the trial court's conclusion that there was no change in the

statements, that there was a substantial and fundamental change in them. While the meaning of the first statement is, as the trial court had found, unclear, nebulous and thus open to "all kinds of interpretations," the meaning of the second statement is in nowise susceptible to that characterization. Rather, it clearly charges plaintiff with responsibility for the financial losses the firm suffered in the Kerr-McGee cases. We believe that Witous' charge in and of itself, without any aid of extrinsic facts, is so obviously and inevitably hurtful to plaintiff's professional reputation that injury thereto may be presumed. See Annot., *Criticism or Disparagement of Attorney's Character, Competence, or Conduct as Defamation*, 46 A.L.R.4th 326, §10(a), (1986).

In so concluding, we reject the trial court's characterization of the additional facts alleged in plaintiff's second-amended complaint as innuendo, which may not be considered in a claim for defamation *per se*. Rather, we believe the trial court should have considered them, as *Chapski* required it to, as relating the context in which Witous allegedly made the statement at issue. If it had done so and had also given the words and implications therefrom their natural and obvious meanings, as *Chapski* also requires, we believe it would not have found that Witous' statement was not defamatory *per se*.

The additional facts to which we refer as establishing the context of Witous' statement are that Witous made the statement in a discussion by Clausen Miller's board of directors of the firm's financial condition during which Witous was criticized for the firm's losses in the Kerr-McGee cases. Coming in that context and giving Witous' words and the implications therefrom their natural and obvious meaning, his statement cannot be interpreted as other than, at the very least, a charge of professional negligence on plaintiff's part. Such a charge by one attorney against another attorney is, in our opinion, so obviously and inevitably hurtful to the latter's professional reputation that damage to it may and should be presumed.

We do not believe that this charge was the type of criticism to which every attorney is or should be subjected by another attorney. (See *Quilici v. Second Amendment Foundation* (7th Cir. 1985), 769 F.2d 414, 418.) In contrast to the statement at issue here, *Quilici* involved statements by a nonattorney that: the plaintiff attorney's presentation at an oral argument was poor and may have "sunk" the appeal; he did not cooperate with other attorneys arguing on his side; he used up more time for his argument than he was allotted and, as a result, used up his side's rebuttal time; and plaintiff's representation was rambling and often pointless. The court held these statements to

be merely expressions of opinion which did not impugn the plaintiff's integrity, impute an inability to perform the responsibilities of an attorney or prejudice him in the legal profession. *Quilici*, 769 F.2d at 420.

■ *Quilici* also relied on the distinction drawn in several pre-*Chapski* appellate court cases (see, *e.g., Britton v. Winfield Public Library* (1981), 101 Ill. App. 3d 546, 428 N.E.2d 650; *Wade v. Sterling Gazette Co.* (1965), 56 Ill. App. 2d 101, 205 N.E.2d 44), between criticism of a party in a particular instance, which they held nonactionable, and a general attack on a party's character. However, as *Erickson v. Aetna Life & Casualty Co.* (1984), 127 Ill. App. 3d 753, 760, 469 N.E.2d 679, and *Costello v. Capital Cities Media, Inc.* (1982), 111 Ill. App. 3d 1009, 1014-15, 445 N.E.2d 13, imply, we believe that, as a test for determining whether a statement is defamatory, that distinction is secondary to the innocent-construction rule as enunciated in *Chapski*.

Moreover, we reject defendants' characterization of Witous' statement as merely descriptive of plaintiff's decision not to force an early resolution of the Kerr-McGee defendants' affirmative defense. Defendants assert that Witous, instead of saying that plaintiff "sat" on the statute of limitations defense, might have said that he "waited" on the affirmative defense, "deferred resolution" of, or "chose not to force" a ruling on, the issue. In so characterizing the statement, defendants focus on the word "sat" and ignore the first part of the statement as alleged by plaintiff, *i.e.*, that he, not Witous, was at fault for the time and money lost in preparing the Kerr-McGee cases. They also ignore the context in which the statement was allegedly made, *i.e.*, a discussion by members of Clausen Miller's board of directors of the firm's financial condition. While defendants' characterization may be a reasonable one of the statement alleged in the first-amended complaint or if the statement had been made in the context of a review of plaintiff's performance as an associate, it is not reasonable given the statement and its context as alleged in the second-amended complaint.

■ The remaining factors in determining whether the trial court abused its discretion in denying leave to file the second-amended complaint also militate against the conclusion that it did not. Defendants did not assert below nor do they here that plaintiff's proposed amended complaint surprised or would otherwise prejudice them. While plaintiff's previous opportunity to amend his complaint is also a factor, we do not believe that, alone, it required a denial of further leave to amend. We note that serving the ends of justice is the para-

mount consideration in the determination whether to allow further amendment. *Hoffman v. Nustra* (1986), 143 Ill. App. 3d 259, 266, 492 N.E.2d 981.

 In further support of the trial court's ruling, defendants characterize Witous' statement as a constitutionally protected expression of opinion. They argue, *inter alia*, that "[t]his case focuses on the right to free speech and the right of business owners to manage their firms," that "Witous' position requires that he freely express his opinion about his employees to other board members," that "[t]hese opinions must be candidly expressed to ensure the proper operation of his firm's practice." They argue that "Illinois courts have assured managers, board members, partners and all others that their opinions will not be held against them." They note that "[t]he law of libel does not provide redress for 'every expression of opinion touching on a person's capabilities or qualifications *** no matter how much the complained of statement may injure the subject person in his own conception.'" *Anderson v. Matz* (1978), 67 Ill. App. 3d 175, 178, 384 N.E.2d 759, quoting *Byars v. Kolodziej* (1977), 48 Ill. App. 3d 1015, 1017, 363 N.E.2d 628; *Dauw v. Field Enterprises, Inc.* (1979), 78 Ill. App. 3d 67, 71, 397 N.E.2d 41.

We reject defendants' characterization of Witous' statement as a constitutionally protected, and thus absolutely privileged, expression of opinion. Such a characterization is permissible only if it is reasonable. (*Chapski v. Copley Press* (1982), 92 Ill. 2d 344, 352, 442 N.E.2d 195.) Moreover, "[w]hether a statement is to be judged to be one of fact or one of opinion is a matter of law [citation], and the involved language must be considered in context to determine whether the statement should be construed to be an expression of opinion." (*Owen v. Carr* (1986), 113 Ill. 2d 273, 280, 497 N.E.2d 1145.) Considering the statement at issue in context, we conclude it is unreasonable to characterize it as an opinion.

 Courts have struggled with the opinion/fact dichotomy ever since the United States Supreme Court intimated in *dicta* in the landmark case of *Gertz v. Robert Welch, Inc.* (1974), 418 U.S. 323, 339-40, 41 L. Ed. 2d 789, 805, 94 S. Ct. 2997, 3007, that opinions are absolutely privileged under the first amendment because "there is no such thing as a false idea." Some of the factors which have been articulated by courts to determine whether an allegedly defamatory statement is a privileged expression of opinion or a nonprivileged statement of fact include whether the statement is precise or verifiable. (*Ollman v. Evans* (D.C. Cir. 1984), 750 F.2d 970 (*en banc*), *cert. denied* (1985), 471 U.S. 1127, 86 L. Ed. 2d 278, 105 S. Ct. 2662.) Moreover,

in the recent case of *Nasr v. Connecticut General Life Insurance Co.* (N.D. Ill. 1986), 632 F. Supp. 1024, the district court reviewed Illinois law on the opinion/fact dichotomy and concluded:

> "An assertion of fact or a negative evaluation of conduct by the plaintiff is actionable if defamatory. [Citations.] The analysis seems to turn on whether the assertion is capable of disproof or whether it was only made in a loose, figurative sense." 632 F. Supp. at 1027.

Judged under any of the foregoing criteria, it is not reasonable to construe Witous' statement as an expression of opinion. Rather, it was a statement that had a precise meaning, the truth or falsity of which was susceptible to verification. That Witous used the word "sat" in a figurative, rather than literal, sense does not make the entire statement loose or figurative. The precise meaning of "sat" in reference to the statute of limitations defense asserted by the Kerr-McGee defendants is made clear by Witous' allegation that plaintiff knew of the *M. T. Reed* case for three years but did not attempt to settle the cases to cut the firm's losses. Because Witous' statement was precise and verifiable, rather than "loose, figurative," we cannot agree that it was a constitutionally protected expression of opinion.

Moreover, "[e]ven assuming that this statement was merely one of opinion, liability for libel may attach when a negative characterization of a person is coupled with a clear but false implication that he was privy to facts about" plaintiff and his actions. (*Catalano v. Pechous* (1978), 69 Ill. App. 3d 797, 808, 387 N.E.2d 714, *aff'd* (1980), 83 Ill. 2d 146, 419 N.E.2d 350, *cert. denied* (1981), 451 U.S. 911, 68 L. Ed. 2d 300, 101 S. Ct. 1981.) The record here reveals that, at the very least, defendant Witous made a negative characterization of plaintiff. In response to plaintiff's request to admit facts, Ferrini denied that Witous had made the complained-of statement and asserted, instead, that Witous told him "in substance, that plaintiff exhibited a negative attitude." That Witous also implied he was privy to unstated facts is established by a memorandum from Ferrini to Witous, dated September 14, 1982, in which he states:

> "I believe there is a misapprehension which must be corrected now. It has come to my attention that [plaintiff] did not *sit* on the statute of limitations defense in Kerr McGee." (Emphasis in original.)

Ferrini then summarizes the posture of the cases when plaintiff received the file and states: "[Plaintiff] was not aware of the existence of the case authority which has caused us the problem." Finally, Ferrini notes that plaintiff "objected to the late raising of the affirmative

defense since it prejudiced plaintiff by being brought after the expense of discovery had been incurred." Ferrini's apparent need to investigate the matter, reflected by this memorandum, reveals Witous' implication of unstated facts. Defendants' citation to *Anderson* and *Dauw* is thus unavailing.

There exist more fundamental reasons why we do not believe Witous' statement is protected by the "privileged expression of opinion" rule. One context in which that assertion is typically made involves claims of the privilege of fair comment and criticism on matters of public interest. (See, *e.g.*, *Catalano*, 69 Ill. App. 3d 797.) In fact, one of the elements of the privilege is that the alleged defamation must have been an expression of opinion. (*Catalano*, 69 Ill. App. 3d 797.) Unlike the cases in which the privilege is applicable, however, Witous' statement did not relate to a matter of public interest. Rather, it related to a strictly private matter as far as the parties, their firm and its other directors were concerned, *i.e.*, its financial condition and the negative effect thereon by the performance of one of the firm's employees. That the subject of Witous' statement was not an area of critical public concern qualifying as a subject " ' "about which information is needed or appropriate to enable the members of society to cope with the exigencies of their period" ' " (*Farnsworth v. Tribune Co.* (1969), 43 Ill. 2d 286, 291, 253 N.E.2d 408, quoting *Curtis Publishing Co. v. Butts* (1967), 388 U.S. 130, 147, 18 L. Ed. 2d 1094, 1106, 87 S. Ct. 1975, 1987) militates against a finding that it was a constitutionally protected opinion.

The assertion of "opinion" is also made in cases involving the privilege based on the news media's right under the first amendment to report governmental and public proceedings on matters of public concern. (See *O'Donnell v. Field Enterprises, Inc.* (1986), 145 Ill. App. 3d 1032, 491 N.E.2d 1212.) As Justice Rizzi noted in *O'Donnell*, that privilege "is broader in scope than the qualified or conditional privileges that are a part of the law of libel." (*O'Donnell*, 145 Ill. App. 3d at 1035-36.) The privilege "exists even though the publisher does not believe that the defamatory statements from the proceedings are true and even though [he] knows that they are false." (*O'Donnell*, 145 Ill. App. 3d at 1036.) In contrast, the qualified privilege, which the parties agree applies here, is grounded on the good faith of the publisher, *i.e.*, the absence of actual malice. (*Zeinfeld v. Hayes Freight Lines, Inc.* (1968), 41 Ill. 2d 345, 243 N.E.2d 217.) Moreover, the need for a "free flow of ideas and opinions imperative to our system of government" (*O'Donnell*, 145 Ill. App. 3d at 1039-40), which insulated, as opinions, the alleged defamations in *O'Donnell*, is not a rele-

vant consideration in the instant case.

▮▮▮ Finally, we decline to determine whether or not Witous' statement was defamatory by comparing it to statements at issue in other cases, for "[e]ach case of slander must be considered on its own facts." (*Angelo v. Brenner* (1980), 84 Ill. App. 3d 594, 598, 406 N.E.2d 38.) This we believe to be a salutary rule, for, while words may retain their natural and obvious meaning from case to case, the context in which they are published and in which they must be judged necessarily differs from case to case. Given the particular context of the statement at issue here, we believe it would serve little purpose to compare it to statements uttered in totally different contexts as presented by defendants' cited cases.

▮▮▮ In view of our determination that the trial court erred in ruling that Witous' statement as alleged in count I of the second-amended complaint was reasonably susceptible to an innocent construction as a matter of law, we hold that it also erred in ruling that count II of that complaint, for slander *per quod*, was for that same reason insufficient at law. As such, we need not decide whether the court erred in applying the innocent-construction rule to that count because, plaintiff contends, the rule applies only to claims of defamation *per se*.

▮▮▮ Defendants also argue that Witous' statement was protected by a qualified privilege and that plaintiff failed to allege sufficient facts to overcome the privilege. Defendants assert, citing *Worrick v. Flora* (1971), 133 Ill. App. 2d 755, 272 N.E.2d 708, that the privilege applies in a corporate setting as long as the statement was made in a proper context and in the best interests of the corporation. Defendants thus imply that such was the case here. In *Worrick*, one employee of a corporation sued another for tortious interference with his employment contract. The court concluded, *inter alia*, that an employee would have no personal liability for that tort if he had acted in the "interest of his employer." (*Worrick*, 133 Ill. App. 2d at 759.) *Ramsey v. Greenwald* (1980), 91 Ill. App. 3d 855, 862-63, 414 N.E.2d 1266, considered that rule in the context of a tortious interference with contract claim based on a "malicious defamation." It does not otherwise appear that the rule has been extended generally to claims of defamation in a corporate context. Moreover, even if that rule were applicable here, plaintiff's allegation that Witous acted with actual malice negatives any contention, at least at the pleading stage, that he was acting in his firm's best interests. (*Cf. Ramsey*, 91 Ill. App. 3d at 863 (fact that defendant acted with actual malice negatived contention that he acted in employer's best interests).) This is a sound

result. It cannot seriously be contended that an allegedly defamatory and therefore false statement to fellow directors of a professional corporation can ever be considered as having been made in the best interests of the corporation. Otherwise, we agree with defendants that Witous' statement was qualifiedly privileged.

This conclusion, however, does not end our inquiry. This is not an appeal from a judgment after a trial on the merits. As such, that we agree with the parties that Witous' statement was qualifiedly privileged does not mean that plaintiff can have no recovery. Rather, we must next decide whether the trial court correctly disallowed further amendment of plaintiff's complaint because he had insufficiently alleged the actual malice necessary to meet the defendants' assertion of a qualified privilege.

The requirements of the qualified privilege have been explained to be:

"Where circumstances exist, or are reasonably believed by the defendant to exist, from which he has an interest or duty, or in good faith believes he has an interest or duty, to make a certain communication to another person having a corresponding interest or duty, and the defendant is so situated that he believes he should make the communication, and if he makes the communication in good faith, under those circumstances believing the communication to be true even though it may not be true, then the communication is qualifiedly or conditionally privileged, even though the defendant's interest or duty be not necessarily a legal one but only moral or social and imperfect in character: 33 Am. Jur., p. 124; 33 Ill. L. and P., pp. 390-391. The essential elements are: good faith by the defendant, an interest or duty to be upheld, a statement limited in its scope to that purpose, a proper occasion and publication in a proper manner to proper parties only: 33 Am. Jur. p. 125; 33 Ill. L. and P., p. 391. *** [A] communication loses its character as privileged and is actionable upon proof of actual malice: 33 Am. Jur., p. 126; 33 Ill. L. and P., p. 392." *Judge v. Rockford Memorial Hospital* (1958), 17 Ill. App. 2d 365, 376-77, 150 N.E.2d 202; *Zeinfeld v. Hayes Freight Lines, Inc.* (1968), 41 Ill. 2d 345, 243 N.E.2d 217.

On the issue before us, *Zeinfeld* is dispositive. Therein, the plaintiff alleged that a libellous letter was written maliciously and in bad faith and that its allegations and implications were false. He had also denied defendants' affirmative defense that the letter was a response to a request from a person having an interest in the information re-

708

quested, was made in good faith and was truthful to the best of the defendants' knowledge. The appellate court had affirmed a judgment on the pleadings for defendants on the grounds, *inter alia*, that the plaintiff had not alleged actual malice sufficiently to defeat the privilege that applied to the letter. Finding the letter conditionally privileged as a matter of law, the court stated, however, that the defendant would still be liable if the privilege were abused and that "[s]uch abuse occurs if the publisher does not believe the truth of the defamatory matter, or has no reasonable grounds for believing it to be true." (*Zeinfeld*, 41 Ill. 2d at 350.) The court concluded that the pleadings relating to plaintiff's libel count raised triable issues of fact "concerning the good faith and knowledge of the defendants." 41 Ill. 2d at 350.

■■ *Zeinfeld* aptly illustrates and resolves the issue before us. Plaintiff's second-amended complaint alleges that he advised Witous, sometime after the Kerr-McGee defendants filed, in April 1982, the motions which led to the dismissal of the cases, that he was not aware of a problem with the statute of limitations until the presentation of those motions. After setting forth the context and content of Witous' statement, made in September 1982, plaintiff alleges that the statement was false, that Witous knew it was false or had no reasonable basis for believing it to be true, that the statement was made maliciously and with an evil intent to injure plaintiff without just cause or excuse. These allegations were legally sufficient to allege the actual malice necessary to overcome a qualified privilege.

*Colson v. Stieg* (1980), 86 Ill. App. 3d 993, 408 N.E.2d 431, *aff'd* (1982), 89 Ill. 2d 205, 433 N.E.2d 246, also reveals the sufficiency of plaintiff's malice allegations. In *Colson*, the appellate court stated:

> In his complaint plaintiff did allege that defendant made the statement 'knowing it to be false, without reasonable grounds for believing it to be true, maliciously, wilfully, intentionally and without reasonable justification or excuse with the intention of destroying Plaintiff's personal and professional reputation, causing Plaintiff to be denied tenure, to be terminated from employment *** and interfering with his ability to be suitably employed in the future.' These allegations, taken together with other factual allegations in the complaint and in the answer to the bill of particulars concerning the relationship of the parties, with the circumstances under which the statements were allegedly made and with the fact that the statement is slanderous *per se* and therefore one from which malice is presumed, are sufficient to charge actual malice." (*Colson*, 86 Ill. App. 3d at 998.)

In affirming, the supreme court stated on this issue:

"The allegations ***, in addition to the many irrelevant charges, alleged that the statement was made by the defendant 'knowing it to be false.' Also contained within the allegation is the charge that the statement was made maliciously, wilfully and intentionally.

In *Coursey v. Greater Niles Township Publishing Corp.* (1968), 40 Ill. 2d 257, 266, and in *Weber v. Woods* (1975), 31 Ill. App. 3d 122, it was held that an allegation that the facts asserted were false and that the statement was made knowing it to be false were sufficient allegations. Although we do not cite the allegations contained in this complaint as a model, we find that the elements necessary *** have been sufficiently alleged." *Colson*, 89 Ill. 2d at 215-16.

Under *Zeinfeld* and *Colson*, we conclude the trial court erred in ruling that plaintiff's second-amended complaint did not sufficiently plead the actual malice necessary to meet the qualified privilege applicable to Witous' statement.

 Finally, we address whether the trial court erred in ruling, as to count IV of the second-amended complaint, that Ferrini did not owe plaintiff the duty asserted therein, *i.e.*, to take reasonable steps to protect plaintiff's reputation and to prevent further injury to him after he learned from plaintiff the true facts. The authority plaintiff cites for this alleged duty is too factually dissimilar to this case to support a conclusion that defendant Ferrini had such a duty as a matter of law. Specifically, we note that *Ramsey v. Greenwald* (1980), 91 Ill. App. 3d 855, 414 N.E.2d 1266, does not support plaintiff's conclusion therefrom that the supervisor-subordinate relationship between Ferrini and plaintiff imposed a general duty on Ferrini to act in good faith in matters affecting plaintiff's employment. The supervisor-defendant's liability in *Ramsey* on a tortious interference with contract claim was affirmed on the narrow ground of his having abused a qualified privilege within the scope of his employment to report on the quality of the plaintiff subordinate's performance by maliciously defaming him in the course of so reporting (91 Ill. App. 3d at 863), not on the type of duty asserted by plaintiff here.

Moreover, although "[d]uty is not a static concept but must adapt to changing notions and policy decisions" (*Nelson v. Commonwealth Edison Co.* (1984), 124 Ill. App. 3d 655, 666, 465 N.E.2d 513), we do not believe the factual realities of this case require recognition of the duty in defendant Ferrini asserted by plaintiff. (See *Kay v. Ludwick* (1967), 87 Ill. App. 2d 114, 118, 230 N.E.2d 494.) Rather, we believe

that Ferrini sufficiently fulfilled any duty he may have owed plaintiff to prevent further harm to his reputation by the memorandum of September 14, 1982, to Witous, the source of the alleged defamation. It is reasonable to infer from the memorandum's tone that Ferrini sent it, if not for the sole purpose of preventing Witous from repeating his statement to other directors and employees of the firm, at least in part to do so. The trial court correctly denied plaintiff leave to file count IV of his second-amended complaint.

For all of the foregoing reasons, the order of the circuit court of Cook County denying plaintiff's motions to vacate the dismissal of his first-amended complaint and for leave to file a second-amended complaint is reversed in part, affirmed in part, and remanded.

Affirmed in part, reversed in part and remanded.

WHITE, P.J., concurs.

JUSTICE RIZZI, dissenting:
In my opinion, the majority discusses and dwells on matters which are not relevant to a disposition of this appeal. As a result, I believe that the majority misses the real issues present here. I also believe that the majority has reached a decision which will seriously impair the ability of law firms and corporations to conduct meaningful directors' meetings. I believe that the majority's decision will have such a chilling effect on directors that their meetings will be deprived of the vitally and frankness of speech that is necessary at a directors' meeting. I would affirm the dismissal of the amended complaint and the refusal to allow the filing of the second-amended complaint.

The first matter that a reviewing court should consider in any case in which a complaint alleging slander has been dismissed is the specificity of the allegations. Here, I believe that the amended complaint and the second-amended complaint are not legally sufficient to maintain a slander action against Witous because they do not set forth the actual words of Witous that are alleged to constitute a slander.

A slander complaint, like any other civil complaint in Illinois, is required to plead the ultimate facts which give rise to the cause of action. It is obvious that the elements of a cause of action for slander are not factually set forth unless the actual defamatory words of the defendant are included in the complaint. Thus, in an action for slander the actual words of the defendant must be set forth in the complaint *in haec verba*. There is no other way that the complaint can be

tested to determine whether it is legally sufficient.

One of the ways to test the legal sufficiency of a slander complaint is to apply the innocent-construction rule. Plainly, you cannot apply the innocent-construction rule unless you know the actual words to which the test is being applied. Conclusionary statements and characterizations by the plaintiff will simply not suffice. Also, there are many words, terms and phrases that are pejorative, but as a matter of law they do not constitute slander. (See *Harris Trust & Savings Bank v. Phillips* (1987), 154 Ill. App. 3d 574, 506 N.E.2d 1370; *Dauw v. Kennedy & Kennedy, Inc.* (1984), 130 Ill. App. 3d 163, 474 N.E.2d 380.) There is simply no way that this truism can be applied to test a complaint for slander unless the complaint plainly sets forth the actual words of the defendant that are alleged to constitute a slander.

Here, the basis of plaintiff's action for slander is stated in paragraph 22 of his amended complaint as follows:

"22. On or about September 3, 1982, JOHN J. WITOUS stated to JAMES T. FERRINI and other members of the Board of Directors of Clausen, Miller, Gorman, Caffrey & Witous, P.C., that plaintiff 'sat' on the statute of limitations defense with knowledge of the *M. T. Reed* cases for three years and as a result, cost Clausen, Miller, which had taken the *Kerr-McGee* cases on a contingent fee basis, a considerable amount of money."

After his amended complaint was dismissed for failure to state a cause of action for slander, plaintiff proposed to file a second-amended complaint in which he changed the relevant paragraph from 22 to 29, and changed the language of the paragraph to read as follows:

"29. At that time, JOHN J. WITOUS, in an effort to deflect said criticism from himself onto Plaintiff and make Plaintiff the scapegoat for the problem, stated that the waste of time and money in preparing the *Kerr-McGee* cases was not his (WITOUS'S) fault but that of the Plaintiff who 'sat' on the statute of limitations defense with knowledge of *M. T. Reed* and its applicability for three years without attempting to settle in order to cut the firm's probable losses."

To me, it is obvious from reading the relevant paragraphs in plaintiff's amended complaint and second-amended complaint that plaintiff is groping to allege a slander action without knowing precisely what Witous said at the board of directors' meeting.

Moreover, particular paragraphs in a complaint, like the complaint itself, must be read in their entirety when tested to determine the sufficiency of the matter alleged. There are no magic buzz words in a

complaint when it is being tested to determine whether it is legally sufficient. (See *Wilson v. Hunk* (1977), 51 Ill. App. 3d 1030, 1035-36, 367 N.E.2d 478, 482-83.) In *Wilson*, the court stated:

> "Counts IV and V undertake to allege slander in the language that defendant, Hunk:
>
> \*\*\* 'came to the aforesaid place of residence of the Plaintiff and there accused him of the crime of pimping in the presence of another police officer, and, later that same day, did again publicly say and accuse the Plaintiff of the crime of pimping at the police station of the City of Decatur in the City of Decatur, Macon County, Illinois in the presence of other persons.'
>
> \* \* \*
>
> We find that each count purporting to allege slander is fatally defective in that the assertedly defamatory statement is alleged in the form of a conclusion that the defendant, Hunk, 'accused him of the crime of pimping' in the presence of others. It has long been the rule that in an action for libel or slander the words alleged to be defamatory must be set forth with particularity." 51 Ill. App. 3d at 1035, 367 N.E.2d at 482.

In the present case, although the word "stated" appears in the relevant paragraphs of the amended complaint and second-amended complaint, I believe that when the paragraphs are read in their entirety, rather than isolating on each word, the paragraphs merely allege conclusions and characterizations of the plaintiff rather than the actual words of Witous. While precision pleading may not be essential in other types of actions, in a slander action a plaintiff must set forth in his complaint the actual words of the defendant that are alleged to constitute a slander.

Since neither the amended complaint nor the second-amended complaint in the present case sets forth the actual words of Witous that are alleged to constitute a slander, I believe that the amended complaint and the second-amended complaint are not legally sufficient to maintain a slander action against Witous. Also, since plaintiff is unable to set forth in a complaint the actual words of Witous, plaintiff should not be permitted to use an alleged slander action against Witous to permeate the qualified privilege that exists with respect to what occurred at the directors' meeting.

Count II of the amended complaint and counts III and IV of the second-amended complaint are efforts to allege actions against Witous for intentional interference with plaintiff's "indefinite duration" employment contract with Clausen, Miller, Gorman, Caffrey & Witous,

P.C. Count IV makes the same charge against Ferrini on the basis that "Ferrini breached his duty to Plaintiff and adopted John J. Witous' statements as his own."

The counts dealing with an intentional interference action incorporate virtually all of the paragraphs of the slander counts. In addition, plaintiff further alleges that Witous' statement at the board of directors' meeting resulted in the firm's decision to terminate plaintiff's employment. There is no claim by plaintiff that the board of directors did not act within the scope of their authority when plaintiff's employment was terminated.

The peculiar relation boards of directors bear to corporations is a result of a corporation's inability to act except through its board of directors and officers. Thus, a corporation acts through its board of directors and officers and is bound by their actions performed within the scope of their authority. In effect, the corporation is the owner of the property but the directors in the performance of their duty possess it, and act in every way as if they own it. It is important to understand and appreciate these principles here.

A defendant's breach of his own employment contract with a plaintiff is of course not a basis for the tort of intentional interference with contractual relations. (*Salaymeh v. InterQual, Inc.* (1987), 155 Ill. App. 3d 1040, 1044-45, 508 N.E.2d 1155, 1159; W. Keeton, Prosser and Keeton on Torts 990 (5th ed. 1984).) Applying this principle to the relationship between a corporation and its board of directors, I believe that neither a corporation nor the members of its board of directors can be guilty of the tort of intentional interference with an employment contract that the corporation has with one of its employees. In my opinion, not only is this conclusion sound on a legal basis but it is also sound on a socio-legal basis. Members of boards of directors must be able to function at board members free from the sword of Damocles in the form of a suit against them personally for intentional interference with an employee's employment contract with the corporation.

I therefore believe that count II of the amended complaint and counts III and IV of the second-amended complaint fail to allege a cause of action against either Witous or Ferrini for intentional interference with plaintiff's employment contract with Clausen, Miller, Gorman, Caffrey & Witous, P.C.

I do not address the majority opinion with any particularity because the majority has applied the innocent-construction rule not to the actual words of Witous, but rather to the conclusions and characterizations of plaintiff. It is meaningless to discuss the application of

the innocent-construction rule to the conclusions and characterizations of plaintiff. Also, the majority decides issues and discusses cases that are simply not relevant to a disposition of this appeal. While it is true that the majority refers to matters that are stated in the briefs, a reviewing court should affirm a judgment or order on any ground appearing in the record. I believe that the record in this case demonstrates that the order from which the appeal is being taken should be affirmed for the reasons that I have stated.

Accordingly, I would affirm the dismissal of the amended complaint and the refusal to allow the filing of the second-amended complaint.