RUBY EDWARDS, a Minor by Mary Phillips, her Next Friend, Plaintiff-Appellant, v. THE UNIVERSITY OF CHICAGO HOSPITALS AND CLINICS, Defendant-Appellee.

First District (1st Division)   No. 84—1040

Opinion filed October 7, 1985.—Rehearing denied November 8, 1985.

Marks, Marks & Kaplan, Ltd., of Chicago (Robert M. Mann, of counsel), for appellant.

Jenner & Block, of Chicago (David P. Sanders and Barry Levenstam, of counsel), for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

Mary Phillips filed the instant defamation action on behalf of her daughter, plaintiff Ruby Edwards, a 14-year-old unmarried girl. It was claimed that a diagnosis of "atopic [*sic*] pregnancy" contained in insurance claim forms submitted by defendant, the University of Chicago Hospitals and Clinics, to Ms. Phillips' health insurance company imputed unchastity on the part of the plaintiff, and was libelous *per se*. The trial court dismissed plaintiff's amended complaint on the grounds that: (1) the insurance forms were subject to a reasonable innocent construction; (2) imputations of unchastity are no longer libelous *per se* in Illinois; and (3) the transmittal of the insurance forms by defendant was protected by a qualified privilege. Addressing only the

issue of qualified privilege, we affirm.

The well-pleaded allegations in plaintiff's pleadings and proposed pleadings reveal that on February 17 and 22, 1983, plaintiff visited the outpatient clinic at the University of Chicago Hospitals and Clinics (defendant) in order to obtain treatment for pain she was experiencing in her left side. A number of tests were performed during her visits, including a pap smear and pregnancy test. During the first visit to the clinic, plaintiff's mother signed a "Group Hospital Insurance Report" authorizing defendant to send the bill for medical services directly to plaintiff's insurer, the Health Insurance Administration, Inc. When Ms. Phillips signed the "Group Hospital Insurance Report," the line designated "Final Diagnosis from Records" was not filled in.

On March 28, 1983, Ms. Phillips was informed by an official of the Health Insurance Administration that certain insurance claim forms had been received from defendant which indicated that plaintiff was pregnant. The first page of the claim forms was a letter addressed to the Health Insurance Administration from defendant, requesting prompt payment for medical services provided to plaintiff. The second page was a statement detailing the tests performed on plaintiff and their costs. In the middle of the page, a printed box designated "Certificate of Illness" provided a space for a diagnosis. In that box, a handwritten notation listed plaintiff's diagnosis as "atopic pregnancy," an apparent misspelling of ectopic pregnancy which means "the development of the ovum outside the uterine cavity, as in the Fallopian tubes or ovary." (Black's Law Dictionary 1061 (5th ed. 1979).) The diagnosis in the "Certificate of Illness" was abstracted from medical records by an individual with the initials "OPD" and was not dated. The third page of the documents was a copy of the "Group Hospital Insurance Report" which had been previously signed by Ms. Phillips during plaintiff's first visit to the clinic. On the copy sent to the Health Insurance Administration, the space designated "Final Diagnosis from Records" was filled in with the words "R/O atopic pregnancy." Defendant claims that "R/O stands for rule out."

After receiving these documents from the official of the Health Insurance Administration, Ms. Phillips then met with an employee in defendant's finance department, Ms. Shira, in order to ask about the diagnosis of atopic pregnancy. Ms. Shira allegedly told Ms. Phillips that the insurance company would not make payment unless there was a diagnosis of a specific illness and that the diagnosis appearing in the "Certificate of Illness" was put there so defendant could obtain payment from the insurer for the medical services provided to plaintiff. When Ms. Shira was informed of the real reason for plaintiff's

visits to the clinic, she allegedly drew a line through the phrase "atopic pregnancy" and wrote "Constant pain L. Side & Kidney Infection."

In April 1983, defendant sent a new set of claim forms to the Health Insurance Administration which, like the documents sent in March, sought payment for the medical services rendered to plaintiff. However, the diagnosis in the "Certificate of Illness" had been changed to read "Initial Gyne Visit." Likewise, the "Final Diagnosis from Records" was changed from "R/O atopic pregnancy" to "Gyn Exam." The new "Group Hospital Insurance Report" was not signed by Ms. Phillips.

On September 13, 1983, plaintiff filed the instant libel action, claiming that defendant maliciously libelled her when it published a diagnosis of atopic pregnancy to the Health Insurance Administration. Plaintiff later amended her complaint in order to attach the insurance claim forms containing the allegedly defamatory diagnosis. Plaintiff also included the allegations concerning the alterations of the diagnosis by defendant. When defendant filed a motion to dismiss, plaintiff sought to file an amendment to her amended complaint in order to add allegations concerning the conversation between Ms. Phillips and Ms. Shira.

On February 17, 1984, the trial court granted defendant's motion to dismiss. Shortly after the trial court entered its order of dismissal, plaintiff filed a motion to vacate that order and sought leave to file a proposed second amended complaint which set forth the above mentioned allegations in greater detail. On March 26, 1984, the trial court denied plaintiff's motion to vacate and denied leave to file a second amended complaint. Plaintiff appeals from the dismissal order and from the order denying her motion to vacate and leave to amend.

Where the trial court's order of dismissal is based on several legal grounds, it may be sustained on any ground supported by the record. (*Shufelt v. City of Rockford* (1980), 89 Ill. App. 3d 717, 719, 412 N.E.2d 4, *appeal denied* (1981), 83 Ill. 2d 575.) When reviewing the grant of a motion to dismiss, the appellate court must accept as true all well-pleaded facts (*Millsaps v. Bankers Life Co.* (1976), 35 Ill. App. 3d 735, 741, 342 N.E.2d 329, *appeal denied* (1976), 63 Ill. 2d 552; *Ashe v. Hatfield* (1973), 13 Ill. App. 3d 214, 215, 300 N.E.2d 545), and determine whether the allegations in the complaint, when viewed in a light most favorable to plaintiff, are sufficient to state a cause of action upon which relief may be granted. (*Cipolla v. Bloom Township High School District No. 206* (1979), 69 Ill. App. 3d 434, 437, 388 N.E.2d 31.) In addition, the decision whether to vacate a judgment

and permit further amendment rests within the sound discretion of the trial court, and its decision will not be disturbed on review unless there is an abuse of discretion. (*Harvey v. Harris Trust & Savings Bank* (1979), 73 Ill. App. 3d 280, 286, 391 N.E.2d 461, *cert. denied* (1980), 445 U.S. 929, 63 L. Ed. 2d 762, 100 S. Ct. 1316.) When exercising its discretion, the trial court may properly consider the ultimate efficacy of the claim. (*Bowman v. County of Lake* (1963), 29 Ill. 2d 268, 281, 193 N.E.2d 833, *appeal dismissed* (1965), 382 U.S. 13, 15 L. Ed. 2d 9, 86 S. Ct. 44), and whether the proposed amendments would cure the defects that resulted in dismissal. See *Matchett v. Chicago Bar Association* (1984), 125 Ill. App. 3d 1004, 1012, 467 N.E.2d 271, *cert. denied* (1985), 471 U.S. 1054, 85 L. Ed. 2d 480, 105 S. Ct. 2115.

■■ A motion to dismiss may properly raise the issue of qualified privilege where the allegedly defamatory document and the complaint affirmatively show that the former is protected by a qualified privilege. (*Millsaps v. Bankers Life Co.* (1976), 35 Ill. App. 3d 735, 742; *Ashe v. Hatfield* (1973), 13 Ill. App. 3d 214, 218.) The prerequisites for a qualified privilege are: (1) good faith by the writer; (2) interest or duty to be upheld; (3) a statement limited in its scope to that purpose; (4) a proper occasion; and (5) publication in a proper manner and to the proper parties only. (*Zeinfeld v. Hayes Freight Lines, Inc.* (1968), 41 Ill. 2d 345, 349, 243 N.E.2d 217, quoting *Judge v. Rockford Memorial Hospital* (1958), 17 Ill. App. 2d 365, 377, 150 N.E.2d 202, *appeal denied* (1958), 14 Ill. 2d 631.) The issue of whether an allegedly defamatory statement is protected by a qualified privilege is a question of law for the court. *Ashe v. Hatfield* (1973), 13 Ill. App. 3d 214, 218.

In determining whether a defendant acted in good faith, a reviewing court may consider the face of the report, the occasion on which it was written, conduct of defendant in connection with the report, and the relationship between the publishers and the recipients. (*Spencer v. Community Hospital* (1980), 87 Ill. App. 3d 214, 220, 408 N.E.2d 981; *Myers v. Spohnholtz* (1973), 11 Ill. App. 3d 560, 569, 297 N.E.2d 183, *appeal denied* (1973), 54 Ill. 2d 593.) Here, the allegedly defamatory diagnosis was published in standard insurance claim forms, which were prepared in the normal course of business by persons who apparently had no personal dealings with plaintiff and who shared a common interest with plaintiff in having the recipient of the forms, the Health Insurance Administration, pay plaintiff's medical bills. All of these factors indicate that defendant prepared and published the insurance claim forms in good faith.

Illinois courts have held that communications motivated by a legit-

imate business interest, even if false and defamatory, may be protected by a qualified privilege. (*Zeinfeld v. Hayes Freight Lines, Inc.* (1968), 41 Ill. 2d 345; *American Pet Motels, Inc. v. Chicago Veterinary Medical Association* (1982), 106 Ill. App. 3d 626, 435 N.E.2d 1297, *appeal denied* (1982), 91 Ill. 2d 566; *Millsaps v. Bankers Life Co.* (1976), 35 Ill. App. 3d 735.) In *Millsaps*, the court held that a legitimate interest was served where an allegedly defamatory report concerning an insurance applicant's mental health was sent to an insurance company which was considering whether to insure the applicant. (35 Ill. App. 3d 735, 743.) In the case at bar, defendant had an equally legitimate business interest in submitting a diagnosis of plaintiff's physical condition to her insurance company in order to secure payment for the medical services provided to her. While the communication in question served defendant's legitimate interests, it also aided plaintiff's interest in obtaining payment of her medical bills by her insurance company.

■ Plaintiff maintains that the gratuitous inclusion of the diagnosis of atopic pregnancy did not serve any legitimate purpose the defendant might have had in sending the insurance claim forms. She claims that the diagnosis in question was not necessary to obtain payment of plaintiff's medical bills because the insurance claim forms already provided space for another diagnosis, the release of which had been authorized by plaintiff's mother. However, plaintiff's allegations regarding Ms. Phillip's conversation with Ms. Shira make it clear that the diagnosis was included in the "Certificate of Illness" solely in order to obtain payment of plaintiff's medical bills. Thus, the diagnosis in question was directly related to defendant's legitimate purpose in submitting the insurance claim forms. Moreover, it was communicated on a proper occasion in a proper manner and was sent only to the persons authorized by Ms. Phillips. Consequently, the diagnosis was privileged.

■ Once a qualified privilege applies, a communication is actionable only if the plaintiff can show that defendant has abused the privilege. (*Spencer v. Community Hospital* (1980), 87 Ill. App. 3d 214, 220.) In order to withstand a motion to dismiss, plaintiff's pleadings must raise an inference that defendant acted with actual malice, *i.e.,* that defendant had knowledge of the falsity, or lacked reasonable grounds for believing the truth of the statement. (See *Zeinfeld v. Hayes Freight Lines, Inc.* (1968), 41 Ill. 2d 345, 350.) To prove actual malice the plaintiff need not show malice in the moral sense of hate, vindictiveness or animosity but may prove a wanton disregard for the rights of others. *Erickson v. Aetna Life & Casualty Co.* (1984), 127

Ill. App. 3d 753, 764, 469 N.E.2d 679.

The conclusory allegations in plaintiff's amended complaint that defendant published the allegedly defamatory diagnosis "maliciously intending to injure her *** and to bring her into public scandal, disrepute and disgrace" are, in and of themselves, insufficient to raise an inference of actual malice. *Allen v. Ali* (1982), 105 Ill. App. 3d 887, 891, 435 N.E.2d 167; *Spencer v. Community Hospital* (1980), 87 Ill. App. 3d 214, 220.

■■ Plaintiff contends that the proposed amendments to her pleadings supply the necessary allegations of specific facts to raise an inference of actual malice. In particular, plaintiff argues that if the diagnosis of "R/O atopic pregnancy" meant rule out atopic pregnancy (as maintained by defendant), then defendant had knowledge of the falsity of the diagnosis of "atopic pregnancy" contained in the "Certificate of Illness." In our view, however, the contradictory diagnosis and defendant's good faith efforts to eliminate the erroneous diagnosis indicated that a mistake was made when the diagnosis of atopic pregnancy was abstracted from other medical records. Mere negligence does not satisfy the scienter requirement of actual malice. (*Bloomfield v. Retail Credit Co.* (1973), 14 Ill. App. 3d 158, 168, 302 N.E.2d 88.) We simply find no evidence that defendant was aware that the diagnosis contained in the "Certificate of Illness" was false, yet chose to publish it anyway. Given that a pregnancy test was actually performed on plaintiff, the inclusion of a diagnosis of atopic pregnancy was not so glaring an error that defendant could be found to have knowingly published it.

In addition, plaintiff argues that the fact that the diagnosis in the "Certificate of Illness" was changed twice demonstrates that defendant acted with reckless disregard for the truth or falsity of the diagnosis. We do not agree. When the diagnosis of atopic pregnancy was shown to be incorrect, it was crossed out and new diagnoses were inserted which more accurately reflected plaintiff's condition. The prompt efforts by defendant to change the erroneous diagnosis and to submit a new diagnosis to the original recipient, plaintiff's insurer, negates any inference that defendant acted with reckless disregard for plaintiff's reputation rights or for the truth of her condition. Moreover, defendant's efforts to rectify the situation distinguishes the instant case from the case of *Vigil v. Rice* (1964), 74 N.M. 693, 397 P.2d 719. We find, therefore, that plaintiff failed to raise an inference that defendant acted with actual malice or bad faith.

Because the elements of qualified privilege were evident from the allegedly defamatory document and the complaint, and because plain-

tiff failed to overcome the privilege by a showing of actual malice, the dismissal of plaintiff's action was proper and is affirmed. We also affirm the trial court's denial of plaintiff's motion to vacate and the denial of leave to amend, because the proposed amendments to plaintiff's pleadings did not cure the fatal flaws in her cause of action.

Affirmed.

BUCKLEY, P.J., and CAMPBELL, J., concur.