GENELCO, INC., Plaintiff-Appellant, v. DAN M. BOWERS, Indiv. and d/b/a Bowers Engineering Company, Defendant-Appellee.

First District (1st Division) No. 1—88—0408

Opinion filed March 13, 1989.—Rehearing denied April 18, 1989.

Peterson, Ross, Schloerb & Seidel, of Chicago (Peter M. Sfikas, Clay H. Phillips, and Mary F. Andreoni, of counsel), for appellant.

Pope, Ballard, Shepard & Fowle, Ltd., of Chicago (Thomas J. Regan, of counsel), for appellee.

JUSTICE QUINLAN delivered the opinion of the court:

Central States Joint Board (Central States), a labor union, contracted with the plaintiff, Genelco, Inc. (Genelco), for the development and installation of a computer system for Central States. Problems arose after the system was installed and Central States hired Bowers Engineering Company to review and evaluate the problems with the system, as well as the system itself. In its review, unfavorable remarks were made about Genelco's performance, and Genelco filed suit against the defendant Dan M. Bowers, individually and d/b/a Bowers Engineering Company (Bowers), alleging that Bowers had maliciously schemed to take over Genelco's business with Central States. Genelco's third amended complaint sought damages from Bowers for tortious interference with contractual relations; tortious interference with prospective economic advantage; commercial disparagement; and wilful and wanton conduct. Bowers moved to dismiss the third amended complaint under section 2—619(a)(9) of the Code of Civil Procedure, asserting that its reports were protected by a qualified privilege. (See Ill. Rev. Stat. 1987, ch. 110, par. 2—619(a)(9).) The trial court granted Bowers' motion and dismissed Genelco's third amended complaint with prejudice. We affirm the trial court's dismissal with prejudice.

The specific facts of the case are as follows. On February 2, 1982, Genelco entered into a contract with Central States which provided that Genelco would develop and install a computer system for Central States called the "Claims Adjusting and Reporting System" (CARS). Genelco later contracted with Central States for another system, called the "Employee Reporting Verification System." Thereafter, Central States experienced problems with its data processing system, and in January 1984, hired Bowers to evaluate and review the problems with the system. Specifically, Bowers was to review the status of the CARS program, which was apparently the basis for the problems, and then make recommendations regarding completion of the program. At that time, Bowers was, of course, aware of the contracts between Genelco and Central States, because its evaluation was to include a review of the parties' responsibilities under the contracts.

On February 2, 1984, Bowers prepared a "Report on EDP Audit" for Central States. Generally, the report consisted of Bowers' conclusions and recommendations concerning Central States' data

processing system and the Genelco program, including: (1) general observations on the Genelco-Central States contracts, Genelco's duties under the contracts, operations, system performance, future operations, and improvements; and (2) recommendations as to action that was required immediately, in the near future, and in the long term concerning the Genelco contracts, data processing operations and system performance.

Specifically, Bowers' report concluded that Genelco's responsibilities, as set forth in the, Genelco-Central States contract, were vaguely defined and suggested that Central States consult legal counsel concerning possible litigation with Genelco. The report also concluded that system performance could be improved substantially, but noted that Genelco's representations to the contrary were cause for concern. The report suggested that possible reasons for Genelco's contrary representations could be due to Genelco's insufficient knowledge or expertise in certain areas, financial pressures, or contract interpretation. The report further stated that while Bowers did not believe that Genelco was incompetent, Bowers, nevertheless, concluded that it did not believe Genelco's performance was acceptable. Moreover, the report noted that after conversations with Genelco, Bowers believed Genelco was either unable or unwilling to bring the system to a satisfactory level. Finally, the report suggested that Central States negotiate a contractual relationship for continued support with either Genelco, Bowers, or some other organization.

In addition to the report, Genelco based its claim against Bowers on two letters from Bowers to Genelco's vice-president, Russell Korte. The first letter, dated March 23, 1984, informed Genelco that the Central States system was not successfully completed under the contract and that Genelco's performance was not in accordance with generally accepted standards of professionalism in the computer applications industry. That letter also stated that Bowers intended to work with Genelco to resolve the problems as quickly as possible, and there was a "punch list" of software problems for Genelco to correct attached to the letter. In its second letter to Genelco, dated September 6, 1984, Bowers stated that although Genelco had adequately responded to certain of the punch list items, there were still other items which Genelco had not adequately remedied. Because Genelco failed to resolve certain of the problems, Bowers stated, it had been forced to step in and remedy the problems for Central States. Bowers further informed Genelco that Central States would not make a claim against Genelco for the costs of Bowers' review, but that Central States would deduct the cost of repairs which Bow-

ers was forced to make from its payment to Genelco.

On June 20, 1985, Genelco filed an eight-count complaint against Bowers for inducing breach of contract, interference with prospective business advantage, libel, commercial disparagement, and violations of the Consumer Fraud and Deceptive Business Practices Act. (See Ill. Rev. Stat. 1987, ch. 121½, par. 261 *et seq.*) The trial court, on Bowers' motion, dismissed portions of that complaint, and Genelco filed an amended complaint. That complaint was also dismissed on Bowers' motion and Genelco filed a second amended complaint. Bowers again moved to dismiss the complaint, this time supporting its motion with the affidavit of Dan Bowers, which verified that he had prepared the February 2, 1984, report and the letters of March 23, 1984, and September 6, 1984. The affidavit expressly stated that distribution of the letters was limited to the individuals named on the documents and that those named were all either employees of Central States, Genelco, Bowers or subcontractors hired by Bowers to assist in the evaluation. Distribution of the report, the affidavit explained, was limited to employees of Central States, Genelco, Bowers and Bowers' subcontractors on this job. The court again dismissed the complaint, without prejudice to Genelco's right to file a third amended complaint. Before filing its third amended complaint, however, Genelco deposed Dan Bowers. Genelco then filed its third amended complaint.

Genelco's third amended complaint, the basis for this appeal, set forth five counts against Bowers: (1) tortious interference with contractual relations; (2) tortious interference with prospective economic advantage; (3) commercial disparagement pursuant to Bowers' letter of March 23, 1984; (4) commercial disparagement pursuant to Bowers' report of February 2, 1984; and (5) wilful and wanton "disregard of Genelco's rights under the contract." Attached to and made part of Genelco's third amended complaint were the Genelco-Central States agreement, Bowers' report of February 2, 1984, Bowers' letter of March 23, 1984, and Bowers' letter of September 6, 1984. The third amended complaint asserted that Bowers' unfavorable written comments about Genelco were made with actual malice because Bowers was trying to steal Central States' business away from Genelco.

Again Bowers moved to dismiss the complaint. Bowers asserted, as it had previously, that under section 2—619(a)(9) of the Code of Civil Procedure, Genelco's claim against it was barred by a qualified privilege. (See Ill. Rev. Stat. 1987, ch. 110, par. 2—619(a)(9).) In addition, Bowers' motion expressly incorporated its previous motions to dismiss, one of which had included the affidavit of Dan Bowers.

After hearing argument by the parties, the transcript reveals that the trial court reviewed in detail the third amended complaint, its prior rulings on Genelco's previous complaints, as well as the applicable case law, and then concluded that consultants such as Bowers possessed a qualified privilege in presenting reports of their findings. The court reasoned that if such consultants were not protected by a qualified privilege, there would be an improper chilling effect upon those hired to render professional judgments. The court concluded that the allegations in the complaint were not sufficient to overcome the privilege and, accordingly, dismissed the third amended complaint with prejudice.

Genelco now asks us to determine whether the trial court properly dismissed its third amended complaint with prejudice under section 2—619(a)(9) of the Code of Civil Procedure. See Ill. Rev. Stat. 1987, ch. 110, par. 2—619(a)(9).

Genelco argues, in its appeal, that the trial court erred when it dismissed Genelco's third amended complaint with prejudice for two basic reasons: (1) Bowers' motion raised an issue of fact which precluded dismissal under section 2—619; and (2) Bowers had not established the defense of qualified privilege by the evidence presented, and, even if it had, it had abused the privilege by its actual malice. (See Ill. Rev. Stat. 1987, ch. 110, par. 2—619.) We need not, however, address all of Genelco's arguments, for Genelco, in oral argument before this court, conceded that Bowers' statements and actions, in fact, were qualifiedly privileged. Thus, we only address whether there was an issue of fact which precluded dismissal, or whether Genelco's allegations of actual malice were sufficient to defeat the privilege.

■ Under section 2—619(a)(9), an action may be dismissed if the claim asserted is "barred by other affirmative matter avoiding the legal effect of or defeating the claim." (Ill. Rev. Stat. 1987, ch. 110, par. 2—619(a)(9).) Under section 2—619, the court is required to accept the truth of all well-pleaded facts and the reasonable inferences therefrom. Specifically, under section 2—619(a)(9), the reference to "affirmative matter" was intended to provide for the assertion of affirmative defenses which wholly negate the claim or refute crucial conclusions of law. See Ill. Rev. Stat. 1987, ch. 110, par. 2—619(a)(9); *Stone v. McCarthy* (1987), 158 Ill. App. 3d 569, 576-77, 511 N.E.2d 780, 784.

■ The "affirmative matter" which Bowers asserted in its motion to dismiss is that it was protected from all of the alleged charges by a qualified privilege. Assertion of a qualified privilege

may properly be raised in a motion to dismiss where the alleged defamatory document and the complaint show that the former is protected by a qualified privilege. *Edwards v. University of Chicago Hospitals & Clinics* (1985), 137 Ill. App. 3d 485, 489, 484 N.E.2d 1100, 1104.

■ ■ Furthermore, once a party establishes that a qualified privilege exists, that privilege may only be overcome by the plaintiff's showing of actual malice, *i.e.*, a showing that the defendant abused the privilege. (*American Pet Motels, Inc. v. Chicago Veterinary Medical Association* (1982), 106 Ill. App. 3d 626, 632, 435 N.E.2d 1297, 1302.) To overcome the privilege then, the burden is on the plaintiff to allege facts from which actual malice may be inferred, and the burden is not met if the plaintiff merely sets forth bare allegations, unsupported by facts, that the defendant acted maliciously, with knowledge of the falsity or with wanton disregard for the rights of others. (*Edwards*, 137 Ill. App. 3d at 490, 484 N.E.2d at 1105; *American Pet Motels*, 106 Ill. App. 3d at 632, 435 N.E.2d at 1302.) These bare allegations of actual malice are not sufficient to negate the good faith of the defendant who is protected by a qualified privilege. (*Allen v. Ali* (1982), 105 Ill. App. 3d 887, 891-92, 435 N.E.2d 167, 170.) "Actual malice" is more than just ill-will; it is a positive desire or intent to injure another, and in the context of a charge of tortious interference with a contractual relationship, the plaintiff must show that the desire to harm was unrelated to the interest he was seeking to protect by bringing about the breach. *Certified Mechanical Contractors, Inc. v. Wight & Co.* (1987), 162 Ill. App. 3d 391, 401, 515 N.E.2d 1047, 1054.

■ The assertion of a qualified privilege is proper as a response to a motion to dismiss and, if established, would act as a bar to each of the counts asserted in Genelco's third amended complaint. Case law has specifically found that the privilege applies to claims of tortious interference with contractual relations (*Certified Mechanical Contractors*, 162 Ill. App. 3d 391, 515 N.E.2d 1047), and tortious interference with prospective economic advantage (*Audition Division, Ltd. v. Better Business Bureau of Metropolitan Chicago, Inc.* (1983), 120 Ill. App. 3d 254, 458 N.E.2d 115).

■ ■ The privilege also applies to a claim of commercial disparagement, because such a claim is very similar in nature to a defamation claim, to which the privilege has expressly been found to apply. (See *Edwards*, 137 Ill. App. 3d 485, 484 N.E.2d 1100.) A defamation claim addresses remarks which criticize one's personal or business integrity, while a commercial disparagement claim addresses remarks

which criticize the quality of one's goods or services. (See *Crinkley v. Dow Jones & Co. (1979)*, 67 Ill. App. 3d 869, 877, 385 N.E.2d 714, 720.) In a defamation claim, the qualified privilege applies where it is in the public interest that the publisher feel free to speak candidly, as long as the publisher speaks honestly and for the public good. (*American Pet Motels*, 106 Ill. App. 3d at 634, 435 N.E.2d at 1303.) Similarly, in a commercial disparagement claim, the qualified privilege also applies where the remarks are in furtherance of a public or legal interest such that the publisher is encouraged to speak honestly and candidly. Here, Bowers had a legal interest, under its contract with Central States, that required it to speak openly, and, as the trial court noted, a public interest factor is also present here because consultants, hired to render professional judgments, should be allowed to report their findings honestly and candidly. See *A.F.M. Corp. v. Corporate Aircraft Management* (D. Mass. 1985), 626 F. Supp. 1533 (where an aviation safety evaluator hired by a jet owner and sued by the company who had a contract to fly the jet was allowed to assert a qualified privilege to defamation and tortious interference with contract claims).

We also note that neither party has specifically addressed the wilful and wanton count in this appeal, and, consequently, its legal sufficiency is not properly before this court on appeal. In any event, on the basis of our review of the record, we find that Genelco asserted no specific facts that could rise to the level of wilful and wanton conduct.

Finally, Genelco contends that its allegations of actual malice were sufficient to overcome any privilege that existed here. It asserts that Bowers lost the qualified privilege by making remarks that it knew were false, and publishing them maliciously, for the purpose of inducing Central States to breach its contract and cut off business relations with Genelco in order that Bowers could take over its business. Bowers, on the other hand, contends that Genelco's allegations of actual malice were insufficient to overcome the admitted privilege because its contentions are not supported by facts in the complaint. Thus, Bowers argues that under these circumstances the qualified privilege bars Genelco's action.

Even though Genelco asserted actual malice on the part of Bowers, those allegations, as Bowers argues, were not supported by any specific facts. Indeed, the facts and the context in which the statements were set forth in the complaint actually support Bowers' position that it was acting within the context of its agreement with Central States and that it did not make any knowingly false statements.

We are further unpersuaded by Genelco's contention that the allegations of actual malice in *Mittelman v. Witous* (1988), 171 Ill. App. 3d 691, 525 N.E.2d 922, found to be sufficient to overcome a qualified privilege there, are factually similar to Genelco's allegations of actual malice here. (See *Mittelman*, 171 Ill. App. 3d 691, 525 N.E.2d 922.) The allegations of actual malice in *Mittelman* were supported by specific and definite factual allegations, which included details of specific actions taken by the plaintiff, and reported to the defendants, to establish that the defendants' allegedly slanderous remarks were false and that the defendants knew them to be false. The factual allegations by Genelco here, in contrast, were vague and indefinite and made no reference to any specific action or inaction or any combination thereof to support the allegations of actual malice.

Genelco, moreover, deposed Dan Bowers prior to its filing of the third amended complaint, but nevertheless, Genelco did not set forth any specific facts in the complaint to establish that Bowers acted with actual malice, *viz.*, that Bowers' statements were made with knowledge of their falsity or with reckless disregard for their truth or falsity. For example, Genelco here set forth no allegations that Bowers did not properly investigate specific factors or that it did not properly review specific parts of the system. Genelco had the opportunity to depose Bowers and to, therefore, ascertain specific facts, if they existed, to support its bare allegations of actual malice. Nevertheless, in its fourth attempt, Genelco did not support its allegations of actual malice with specific facts. Genelco's bald assertions were not sufficient to overcome Bowers' qualified privilege.

For all of the foregoing reasons, the order of the trial court dismissing Genelco's third amended complaint with prejudice was proper, and we, accordingly, affirm the order of the circuit court.

Order affirmed.

MANNING, P.J., and CAMPBELL, J., concur.