ILLINOIS FOUNDERS INSURANCE COMPANY, Plaintiff-Appellant, v. INEZ SMITH, Indiv. and d/b/a Kitty's Lounge, *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 1—90—3187

Opinion filed June 16, 1992.

Malek & Wein, P.C., of Chicago (Edward J. Malek and Thomas N. Osran, of counsel), for appellant.

Linda S. Kagan and Law Offices of James T.J. Keating, P.C., both of Chicago (William G. Berg, Elizabeth S. Davis, and James T.J. Keating, of counsel), for appellees.

JUSTICE McCORMICK delivered the opinion of the court:

Plaintiff, Illinois Founders Insurance Company, sought a judgment declaring that it had no duty to defend or indemnify defendants, Inez Smith and James Lowe, on two counts of a six-count complaint concerning a homicide in Smith's bar. The trial court denied the insurance company's motion for summary judgment and dismissed the complaint for declaratory judgment.

On March 11, 1984, Raymond Belk got into a fight with James Lowe in Kitty's Lounge, which is owned by Inez Smith. Lowe shot

Belk and several days later Belk died from the injury. In a criminal trial Lowe was found not guilty of murder but guilty of voluntary manslaughter.

In 1985 Christine Belk, Raymond Belk's mother and administratrix of his estate, filed a civil action against Smith and Lowe, naming Raymond, Raymond's brother Anthony Belk, and Raymond's children, Adrienne and Raymond Fleming, as additional plaintiffs. Christine Belk alleged in count I of the complaint that Smith gave liquor to Lowe, causing him to become intoxicated, and Lowe shot Raymond Belk in part because of that intoxication, rendering Smith liable for the injuries under the Dramshop Act (Ill. Rev. Stat. 1983, ch. 43, par. 135). Counts II and III charge Smith and Lowe, respectively, with negligently causing Raymond Belk's wrongful death; counts IV and V are survival actions, charging Smith and Lowe, respectively, with negligently causing decedent's suffering prior to his death. Count VI charges both Smith and Lowe with intentionally inflicting emotional distress upon Anthony Belk, who witnessed the shooting.

Smith and Lowe tendered defense of Belk's lawsuit to plaintiff, from whom Smith had purchased both a liquor liability policy and a general liability policy to cover her business from January 1, 1984, to January 1, 1985. Plaintiff then brought the instant action against Smith, Lowe, Christine Belk and the other named plaintiffs in Belk's suit, seeking a judgment declaring that plaintiff had no duty to defend or indemnify Smith and Lowe on counts I and VI of Belk's lawsuit. Plaintiff moved for summary judgment on the complaint, supporting its motion with transcripts of the depositions of Smith and Lowe.

Smith testified in her deposition that although she and Lowe had not exchanged formal vows, she considered him her common-law husband. They had lived together in an apartment above Kitty's Lounge since 1973. Lowe helped her with many things, including tasks related to running the tavern. She never gave Lowe any money. On March 11, near closing time, a group of about eight young men, including Raymond Belk, ran into the tavern shouting gang slogans of the Vice Lords. Smith heard Belk say he knew Lowe had a gun, and he would "make him use that motherfucker." Smith took Belk by the arm out of the bar because he was belligerent. Lowe was not responsible for getting people out of the bar if they were creating a disturbance, but he, like some other patrons, sometimes took the responsibility upon himself. Lowe understood that if Smith had any trouble, business or otherwise, "it was all right" for him to help her out. People in the neighborhood knew of their relationship and they knew that if Lowe

said someone was not to come into the bar, Smith did not want them in there.

In his deposition Lowe stated that he worked full time for a box manufacturer in 1984. After work on March 10, 1984, Lowe went to Kitty's Lounge. Sometime after 2 a.m. on March 11, "acting on behalf of M[s.] Smith in the protection of her and her business," Lowe asked Raymond Belk and some of his companions to leave. Lowe said he was not an employee of Smith or her tavern. He had a handgun, registered in his name through Kitty's Lounge, which he used to protect Smith and himself from the Vice Lords. After Smith took Raymond Belk out of the tavern, Lowe blocked the door so Belk could not return. Belk said, "[Y]ou're a gray-headed motherfucker, we got you now" and put his hand in Lowe's jacket. Lowe then pulled his gun from his jacket and shot Belk.

Plaintiff argued on the summary judgment motion that it had no duty to defend or indemnify Smith under the liquor liability policy for the dramshop action, count I of Belk's complaint, because that policy excluded coverage for

> "loss caused directly or indirectly by any act of the owner or licensee or of any employee of such owner or licensee or anyone acting in their behalf other than the selling or giving of alcoholic liquors upon the premises; *** [and for] loss resulting from the selling or giving *** of alcoholic liquors to any person employed by or acting on behalf of the insured."

Plaintiff also argued that it had no duty to defend or indemnify Smith and Lowe under the general liability policy for the intentional infliction of emotional distress, count VI of the complaint, because the policy coverage is limited to occurrences, which are defined in the policy as "accident[s] *** neither expected [nor] intended from the standpoint of the **insured**." The trial court denied the motions for summary judgment and dismissed the complaint *sua sponte*.

Plaintiff seeks a declaration that it has neither a duty to defend nor a duty to indemnify Smith and Lowe on counts I and VI of Belk's complaint. Because the duty to defend is distinct from and broader than the duty to indemnify (*Conway v. Country Casualty Insurance Co.* (1982), 92 Ill. 2d 388, 394, 442 N.E.2d 245, 247), we address the two duties separately.

## I

Plaintiff seeks a declaration that it has no duty to defend some of the counts of a complaint containing multiple counts against Smith

and Lowe, although it acknowledges that it has a duty to defend them on other counts.

In *Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 355 N.E.2d 24, the complaint filed against the insured included three separate counts. Our supreme court found that one count fell clearly within the insurance coverage, one count could have been within coverage, and one count fell clearly outside the insurance coverage. (*Peppers*, 64 Ill. 2d at 193, 355 N.E.2d at 28.) The court found that the insurer had a duty to defend the entire lawsuit, stating:

> "This duty to defend extends to cases where the complaint alleges several causes of action or theories of recovery against an insured, one of which is within the coverage of a policy while the others may not be. [Citations.] The trial court properly held that St. Paul was obligated to defend Peppers." (*Peppers*, 64 Ill. 2d at 194, 355 N.E.2d at 28.)

This conclusion is echoed in another case plaintiff cites:

> "Even if the complaint alleges conduct that is not covered by the policy (usually intentional tortious conduct), the insurer must defend the suit if the complaint also alleges covered conduct (negligence)." *State Farm Fire & Casualty Co. v. Shelton* (1988), 176 Ill. App. 3d 858, 861, 531 N.E.2d 913, 915.

Plaintiff has never contended that it has no duty to defend Smith and Lowe on counts II through V of Belk's complaint. Therefore, under *Peppers* and *Shelton*, it must defend the entire lawsuit. Since there appears to be a conflict between plaintiff's interests and Smith and Lowe's interests in the Belk suit, Smith and Lowe may hire their own counsel and plaintiff must reimburse them for their cost of representation. *Thornton v. Paul* (1978), 74 Ill. 2d 132, 152, 384 N.E.2d 335, 343.

## II

Although plaintiff must defend Smith and Lowe on all counts of Belk's lawsuit, plaintiff may not need to indemnify them for all damages Belk recovers. (*Shelton*, 176 Ill. App. 3d at 862, 531 N.E.2d at 916.) However:

> "A declaratory judgment action to determine an insurer's duty to indemnify its insured, brought prior to a determination of the insured's liability, is premature since the question to be determined is not then ripe for adjudication. [Citations.] Our supreme court, in *Murphy v. Urso* (1981), 88 Ill. 2d 444, 455-57, [430 N.E.2d 1079, 1083-85,] has carved out an exception for declaratory judgment actions brought to determine insurance cov-

erage where the issues are separable from those in the underlying action." *Maryland Casualty Co. v. Chicago & North Western Transportation Co.* (1984), 126 Ill. App. 3d 150, 156-57, 466 N.E.2d 1091, 1095-96.

Since Smith and Lowe's liability in the personal injury suit has not yet been determined, the trial court's dismissal of the complaint for a judgment declaring that plaintiff had no duty to indemnify Smith and Lowe on counts I and VI of Belk's complaint was proper, under *Chicago & North Western*, unless the issues determining the duty to indemnify were separable from those to be decided in Belk's suit.

*Murphy v. Urso* did not involve an action for a judgment declaring that an insurer had no duty to indemnify its insureds; the question the court addressed was whether the insurer waived its policy defenses to a garnishment suit when the insurer failed to either defend its insured or seek a judgment declaring that it had no duty to defend. The parties are not prejudiced by having the issue of indemnification determined after trial of the underlying suit, when the question of whether the insureds are liable at all has been determined. Although we are not persuaded that *Murphy v. Urso* creates the exception the court found in *Chicago & North Western*, we hold in this case only that plaintiff has failed to bring this case within that exception.

Plaintiff contends that the issues involved in determining whether there is coverage for the injuries alleged in counts I and VI of Belk's complaint are separable from the matters at issue in Belk's case because the facts needed to establish that there is no coverage are not in dispute and do not determine any crucial issue in Belk's lawsuit.

First, plaintiff contends that in their depositions Smith and Lowe conceded the facts necessary to show that there is no coverage for potential liability under Belk's count I, the dramshop action. Smith and Lowe said that Lowe was acting on Smith's behalf when he told Raymond Belk to leave Kitty's Lounge, and the liquor liability policy excludes coverage for actions on behalf of the bar or its owner. Defendants maintain that Lowe was not acting "on behalf" of Smith or Kitty's Lounge, within the meaning of the policy exclusion, when he shot Raymond Belk.

The issue presents a mixed question of law and fact, since the construction of the policy exclusion is a question of law, and the nature of Lowe's acts and intentions is a question of fact. The court must construe ambiguous provisions of an insurance policy in favor of the insured.

"Ambiguous provisions in which an insurer seeks to limit its liability are construed most strongly against the insurer with the insurer having the obligation to show that the claim falls clearly within the exclusion." (*Economy Fire & Casualty Co. v. Kubik* (1986), 142 Ill. App. 3d 906, 909, 492 N.E.2d 504, 506.)

This court has held that the phrase "arising out of," in an insurance contract, is "both broad and vague." (*Burlington Northern R.R. Co. v. Illinois Emcasco Insurance Co.* (1987), 158 Ill. App. 3d 783, 787, 511 N.E.2d 776, 779.) Similarly, the phrase "on behalf of," as used in the policy exclusion in this case, is both broad and vague, and therefore, it must be construed narrowly, in favor of the insured.

Lowe and Smith in their depositions said that Lowe was acting to help and protect Smith when he told Belk to leave the bar. He did this because of his personal relationship with her and not because of any agency relationship with either her or her bar. Defendants could argue that the policy exclusion pertains only to actions taken to help the bar, or the owner in her status as owner, and not to actions taken due to a personal relationship with the owner.

When Lowe assented to plaintiff's attorney's suggestion that he was acting on behalf of Smith when he told Belk to leave, Lowe did not indicate that he intended the phrase in the same sense as it is intended in the policy. Especially in view of the principle that the courts must construe ambiguous provisions in insurance policies in favor of the insured, plaintiff's evidence is not sufficient to establish that Lowe was acting on her behalf within the meaning of the policy exclusion. The trial court apparently so found because it denied the motion for summary judgment.

The trial court also dismissed the complaint for a declaratory judgment because declaratory judgment actions are not proper methods to determine factual issues that are crucial to the insured's liability in an underlying personal injury action. (*Peppers*, 64 Ill. 2d at 197, 355 N.E.2d at 30.) Our supreme court applied this rule to dismiss a declaratory judgment action where it found that that action "could possibly" establish some allegations of the underlying complaint and "might preclude" recovery under some of the personal injury plaintiff's theories. *Peppers*, 64 Ill. 2d at 196-97, 355 N.E.2d at 30.

■ Plaintiff contends that the issue of whether Smith has coverage for the acts alleged in the dramshop count cannot determine her liability. If the trial court were to find in the declaratory judgment action that Smith had coverage under the liquor liability policy for injuries Lowe caused because Lowe was neither her employee, nor was he acting on her behalf, when he shot Raymond Belk, Christine Belk

would be precluded from recovering on the basis of negligence in hiring Lowe, which is presented as a theory for recovery in both counts II and IV of her complaint (and which is presented as an additional separate count in her amended complaint). Since this issue should be decided in the personal injury lawsuit, the trial court properly dismissed the complaint for a judgment declaring that plaintiff had no duty to defend or indemnify Smith and Lowe on the dramshop count of Belk's complaint.

■ Plaintiff maintains that the trial court should have granted its motion for a summary judgment declaring that plaintiff had no duty to indemnify Smith and Lowe for any liability they incur under count VI of Belk's complaint, which charges them with intentional infliction of emotional distress. The general liability policy covers only accidents which are neither intended nor expected from the standpoint of the insured. Plaintiff contends that if either Smith or Lowe is liable, plaintiff cannot be liable because the act would have been found to be intended by the insured, and if neither Smith nor Lowe is liable, then there is no liability for plaintiff to indemnify.

In *Gregor v. Kleiser* (1982), 111 Ill. App. 3d 333, 337-38, 443 N.E.2d 1162, 1166, the court held:

"[A]n employer is liable for an employee's torts committed within the scope of his employment. *** If an employee commits an intentional tort with the dual purpose of furthering the employer's interest and venting personal anger, *respondeat superior* may lie ***."

Therefore Smith may be liable for Lowe's intentional tort, if he is found to be her employee as alleged in the complaint, even though his acts were neither expected nor intended from her standpoint.

Moreover, plaintiff's argument relies solely on the title Belk placed on count VI of her complaint. That count incorporates the many allegations of Smith's and Lowe's negligence from the other counts of the complaint, and adds that their acts caused Anthony Belk's injuries, but it fails to allege that either Smith or Lowe knew or should have known that Raymond Belk's brother was present before Lowe shot Belk.

In *Rosenberg v. Packerland Packing Co.* (1977), 55 Ill. App. 3d 959, 370 N.E.2d 1235, the trial court dismissed the complaint, finding that the count for negligent infliction of emotional distress failed to state facts sufficient to support that cause of action. Although the appellate court agreed with this conclusion, it reversed the trial court's judgment, holding that that count of the complaint stated the facts

necessary to support a valid cause of action for negligent entrustment. The court said:

> "A motion to dismiss does not lie if a good cause of action is stated, although not the one intended by plaintiff(s)." *Rosenberg*, 55 Ill. App. 3d at 964, 370 N.E.2d at 1239.

Similarly, count VI of Belk's complaint may state a valid cause of action other than intentional infliction of emotional distress. The insurer must look to the factual allegations of the complaint, not just to the titles of the counts of the complaint, to determine whether the alleged injuries are covered by the insurance. (See *Peppers*, 64 Ill. 2d at 193, 355 N.E.2d at 28.) Count VI includes many allegations of Smith's and Lowe's negligent acts, and injury caused by those acts may be covered by plaintiff's insurance. The trial court correctly denied plaintiff's motion for summary judgment concerning its duty to indemnify Smith and Lowe for their potential liability under count VI of Belk's complaint.

The central issues which the trial court would need to decide to determine whether plaintiff is liable for Belk's recovery on count VI are whether this count states a valid cause of action against Smith and whether the injury alleged must have been intended or expected from her point of view for Belk to recover. Since determination of either of these issues would be crucial to Belk's right to recover on any theory supported by the facts stated in this count, these issues should be decided in the personal injury action rather than this declaratory judgment action. The trial court properly found that the issue of whether plaintiff had a duty to indemnify Smith and Lowe on count VI of Belk's complaint was not ripe, and therefore it correctly dismissed the complaint for a declaratory judgment.

For the reasons stated above, we find that the trial court properly denied plaintiff's motion for summary judgment and dismissed the complaint.

Affirmed.

SCARIANO and DiVITO, JJ., concur.