**J.D. EDWARDS & COMPANY,**
Plaintiff–Appellee,

v.

**Randy PODANY and Mercer Management Consulting, Inc., Defendants–Appellants.**

No. 98–2486.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 13, 1999.

Decided Feb. 22, 1999.

William J. McKenna, Jr., Hopkins & Sutter, Chicago, IL, Stephen J. Baity (argued), Godin & Baity, Denver, CO, for Plaintiff–Appellee.

Michael M. Lane (argued), McCullough, Campbell & Lane, Chicago, IL, for Defendants–Appellants.

Before POSNER, Chief Judge, and COFFEY and EASTERBROOK, Circuit Judges.

POSNER, Chief Judge.

A company had a contract to sell computer services. The buyer broke the contract, but the seller's suit, a diversity suit governed, so far as substantive issues are concerned, by the law of Illinois, is not against the buyer; it is against a consulting firm (and a former employee of the firm) that advised the buyer and was responsible for the buyer's decision to break its contract with the seller. The defendants are accused of having committed the tort of deliberately inducing a breach of contract. *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.,* 131 Ill.2d 145, 137 Ill.Dec. 19, 545 N.E.2d 672, 676 (Ill.1989); *Strosberg v. Brauvin Realty Services, Inc.,* 295 Ill.App.3d 17, 229 Ill.Dec. 361, 691 N.E.2d 834, 845 (Ill.App.1998); *In re Estate of Albergo,* 275 Ill.App.3d 439, 211 Ill.Dec. 905, 656 N.E.2d 97, 103 (Ill.App.1995); *Suffrin v. Hosier,* 128 F.3d 594, 597–98 (7th Cir.1997); *Restatement (Second) of Torts* §§ 766, 767 (1979). This is a mysterious tort. It seems to give the victim of a breach of contract two remedies, where one—a suit for breach of contract against the party who broke the contract—ought to suffice. But in some cases, of which this is not one, the contract breaker is insolvent; and in others, the third party could have avoided the breach of contract at a lower cost than the contract breaker. This may be such a case; SNE, the party that broke the contract, did so on the advice of a consultant who purported to be a specialist in the field of business and computer systems.

In any event, whether the provision of a remedy in tort for inducing a breach of contract is wise is not for us to decide. It is a settled part of the law of Illinois. Nor is there any doubt that the plaintiff made out a prima facie case. The only issue is whether the jury was justified in rejecting, en route to awarding the plaintiff $2.3 million in damages, the defense to inducing breach of contract that is called the "consultant's privilege," or more commonly the privilege of "honest advice." This is the privilege of a consultant, or other advisor, to offer good-faith advice to a client without fear of liability should the client act on that advice to the harm of a third person, in this case the plaintiff. *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc., supra,* 137 Ill. Dec. 19, 545 N.E.2d at 677–78; *In re Estate of Albergo, supra,* 211 Ill.Dec. 905, 656 N.E.2d at 104; *Welch v. Bancorp Management Advisors, Inc.,* 296 Or. 208, 675 P.2d 172, 178 (Ore.1983); *Restatement, supra,* § 772; W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 129, p. 985 (5th ed.1984).

The privilege resembles (*id.* at 989; see, e.g., *Genelco, Inc. v. Bowers,* 181 Ill. App.3d 1, 129 Ill.Dec. 733, 536 N.E.2d 783, 787 (Ill.App.1989)) the rule in defamation law that where there is a duty to speak, a defamatory utterance, if made in good faith and not disseminated any further than necessary, is privileged. *Kuwik v. Starmark Star Marketing & Administration, Inc.,* 156 Ill.2d 16, 188 Ill.Dec. 765, 619 N.E.2d 129, 135–36 (Ill. 1993); *Sullivan v. Conway,* 157 F.3d 1092, 1098–99 (7th Cir.1998) (Illinois law); *Jones v. Western & Southern Life Ins. Co.,* 91 F.3d 1032, 1035 (7th Cir.1996) (same). A consultant is hired to give advice. Often the advice is painful, because firms frequently turn to consultants when they are in trouble or when they want to do something that hurts and want to spread the blame a bit. The consultant's advice may lead to downsizing, layoffs, outsourcing, and countless other perturbations, including, as here, contractual terminations. It would cast quite a large, dark cloud over the consulting business if consultants could be hauled into court for having given advice that in hindsight could be characterized as having been ill-advised, ill-informed, or otherwise negligent. The consultant's privilege cuts off this possibility. But it is not absolute. It is a qualified privilege, like qualified immunity as distinct from absolute immunity in the law of public officers' torts. *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

It is qualified in two ways. First, it is limited to advice given within the scope of the consultant's engagement. *Mittelman v. Witous,* 135 Ill.2d 220, 142 Ill.Dec. 232, 552 N.E.2d 973, 987 (Ill.1989); *In re Estate of Albergo, supra,* 211 Ill.Dec. 905, 656 N.E.2d at 104; *Joseph P. Caulfield & Associates v. Litho Productions, Inc.,* 155 F.3d 883, 890

(7th Cir.1998); *Restatement, supra,* § 772(b) and comment d. If a consultant hired to advise the client, a fast-food chain, on selecting a new telephone system suggested that the client terminate its fast-food franchisee in Oshkosh because the franchisee was serving soggy doughnuts, and the suggestion was adopted, the consultant could not set up the consultant's privilege in defense of the franchisee's suit for interference with contract. Not having been hired to advise on the client's franchise system, the consultant would have no contractual duty to render frank and fearless (or indeed any) advice on the subject.

Second, if the consultant does not give honest advice—if he uses his engagement to hurt other people exclusively for his own benefit (or out of dislike of his victim) rather than for the benefit of his client—he forfeits the privilege. *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc., supra,* 137 Ill.Dec. 19, 545 N.E.2d at 678; *Certified Mechanical Contractors, Inc. v. Wight & Co.,* 162 Ill.App.3d 391, 113 Ill.Dec. 888, 515 N.E.2d 1047, 1053–54 (Ill.App.1987). If solely to feather his own nest, and without believing that (or caring whether) he is helping his client, he causes the client to break a contract to the detriment of the other party to the contract, he is liable for inducing the breach. *Mittelman v. Witous, supra,* 142 Ill.Dec. 232, 552 N.E.2d at 987; *Vajda v. Arthur Andersen & Co.,* 253 Ill.App.3d 345, 191 Ill.Dec. 965, 624 N.E.2d 1343, 1352 (Ill. App.1993); *Chapman v. Crown Glass Corp.,* 197 Ill.App.3d 995, 145 Ill.Dec. 486, 557 N.E.2d 256, 263–65 (Ill.App.1990).

■ Both limitations on the consultant's privilege, scope and good faith, are in issue here. The defendants argue that there was insufficient evidence to justify the jury's rejecting the privilege on either ground. The argument fails, as we can show largely just by recounting the facts, viewed as favorably to the plaintiff, the winner in the district court, as the record will permit.

■ SNE—the client and contract breaker—manufactures windows. It hired J.D. Edwards & Company, the plaintiff, to supply software for a project that SNE called PBS (for "Primary Business System") and that involved streamlining SNE's business and obtaining the computer support necessary for the streamlining. SNE rejected another company's software called BPCS because BPCS lacked a "configurator," which is a program that facilitates custom manufacturing. While the transition to PBS was under way, there was a reorganization that made SNE one of three divisions of a corporation headed by Gary Massel. Enter the defendants, Randy Podany and Mercer Management Consulting, Inc. Massel knew Podany, an employee of Mercer, and asked him to do what is called in the consulting trade a "sniff test"—a very quick, light review—of PBS. The fee was $10,000. After "sniffing" for a day (concretely, meeting with the PBS managers and reviewing relevant documents), Podany advised Massel that the basic approach that SNE had taken to streamlining its business, that of "reengineering in parallel," and the leading role that it had assigned to J.D. Edwards, were unsound. Reengineering in parallel means defining the company's business needs and *at the same time* obtaining the necessary computer support or other technical support. Podany is not a software expert and neither he nor his company had been retained to select software or offer a critique of the contract with J.D. Edwards. His advice had been sought at the business level. But reengineering in parallel is an example in consultant-speak of a "systems concept" and thus fell within the scope of Podany's (and Mercer's) engagement.

Podany also advised Massel to stop installing J.D. Edwards' software. The plaintiff argues that this advice was outside the terms of the engagement and so outside the protection of the consultant's privilege, but we disagree. If reengineering in parallel was a mistake and (as Podany urged) the definition of SNE's business needs should precede the installation of any software, it followed that the installation should be halted; and making this explicit did not carry the consultant's advice outside the boundaries of the privilege. To hold that it did would simply lead consultants to insist on very broad terms of engagement. That, or make them too timid. If a surgeon discovered a cancerous polyp on the patient's colon while performing an ap-

pendectomy, we wouldn't want him to refuse to remove the polyp because he feared exceeding the scope of his engagement. *Kennedy v. Parrott,* 243 N.C. 355, 90 S.E.2d 754 (N.C.1956); *Mohr v. Williams,* 95 Minn. 261, 104 N.W. 12, 15 (Minn.1905). There might be medical reasons for him to decline to remove it; it might be beyond his competence; but if it were within his competence, we would want him to act because the patient if he could be consulted would want him to act. Similarly, if a consultant discovers a problem that is outside the strict terms of his engagement but within the range of his competence, the client would want him to bring the problem to the client's attention without fear of being sued should the solution involve the termination of a contract. So likely is this to be what the client would want that we can assume, just as in the surgical case, that it is an implied term of the engagement.

Podany, however, went further than merely advising Massell to stop installing J.D. Edwards' software. He ordered the SNE executive in charge of implementation of the contract with J.D. Edwards to stop paying Edwards. This went well beyond his original engagement, but the engagement had been enlarged by Massel, who had directed everyone in his company to "have all computer related purchases approved by Randy [Podany]." Podany's stop-payment orders were within the implied scope of this new engagement.

■ The problem with the defendants' assertion of the consultant's privilege is not that Podany exceeded the scope of their engagement; it is that a reasonable jury could find that he acted in bad faith. Podany knew very little about the software that was being supplied by J.D. Edwards. The only software program he was familiar with was—BPCS. So he maneuvered to replace Edwards' software with BPCS, even though BPCS lacked a configurator, which SNE had wanted. The reason he gave was that the only one of Massel's three divisions that was able to provide Massel with timely and accurate financial data had BPCS, and he ascribed the division's success in this regard to BPCS. But he did not attempt to trade off this advantage against the disadvantage, for

SNE, that BPCS lacked a configurator. He arranged things so that BPCS would be selected without a fair comparison with J.D. Edwards' software. And, what is critical—for mistakes do not void the consultant's privilege—he did all this in order to land himself a lucrative job with SNE's parent as director of information services. And having done so he procured further engagements of his former employer, Mercer. During the 18 months that he remained employed by SNE, he earned $370,000 and Mercer billed SNE $1.6 million. But BPCS was a flop; it was never successfully installed in SNE. One reason it was a flop was that it lacked a configurator.

■ If Podany was simply a fool, and got SNE to replace J.D. Edwards' software with BPCS because he ignorantly believed that the latter really was superior for SNE's needs even though it lacked a configurator, he and his employer would be sheltered from liability by the consultant's privilege. They would be, indeed, securely within the core of the privilege. But if Podany's only object was to enrich himself—and Mercer—the privilege is forfeited. Here we pause to observe that the parties have not tried to distinguish Mercer's liability from Podany's. It has been understood that they sink or swim together. Podany was acting to further Mercer's interests as well as his own, thus making Mercer liable for Podany's intentional tort under the doctrine of respondeat superior. *Illinois Founders Ins. Co. v. Smith,* 231 Ill.App.3d 269, 172 Ill.Dec. 780, 596 N.E.2d 59, 64 (Ill.App.1992); *Rice v. Nova Biomedical Corp.,* 38 F.3d 909, 913 (7th Cir.1994) (applying Illinois law); *McGanty v. Staudenraus,* 321 Or. 532, 901 P.2d 841, 846 (Ore. 1995).

■ In pointing to Podany's motives, we do not make the mistake of confusing bad faith with greed. A consultant might be in consulting purely for the money, but as long as he made his money by offering honest advice within the scope of his employment, his private motives would be irrelevant. *In re Estate of Albergo, supra,* 211 Ill.Dec. 905, 656 N.E.2d at 104; *Los Angeles Airways, Inc. v. Davis,* 687 F.2d 321, 328 (9th Cir. 1982); *Restatement, supra,* § 772 comment

c. It is when a consultant decides to make money by rendering dishonest advice (or going outside the terms of his engagement) that he loses the protection of privilege and assumes the usual liabilities.

Podany denied any such ulterior motive. But his credibility was impeached, and the jury was not required to believe him. His lack of credibility, like pretext in a discrimination case, combined with circumstantial evidence to justify the jury in finding bad faith. A plaintiff cannot win just by putting the defendant on the stand and asking the jury to disbelieve him. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 512, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984); *United Steelworkers of America v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542 (9th Cir.1989) (en banc); *Dyer v. MacDougall*, 201 F.2d 265, 268–69 (2d Cir.1952) (L.Hand, J.). But if there is other evidence of liability, then unconvincing denials by the defendant can help persuade the jury that the plaintiff's story is true. E.g., *Coco v. Elmwood Care, Inc.*, 128 F.3d 1177, 1179 (7th Cir.1997); *United States v. Zafiro*, 945 F.2d 881, 888 (7th Cir.1991), aff'd, 506 U.S. 534, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993). The other evidence in this case included the fact that, after rejecting the concept of reengineering in parallel and on the basis of that rejection halting the implementation of the contract with J.D. Edwards, Podany had SNE install BPCS on the same basis—that is, in parallel with the specification of SNE's needs. The justification for rigging the software selection process to assure the selection of BPCS—the only software he could work with—that he offered (the success of BPCS in generating prompt and accurate financial information for another division) was inadequate given BPCS's lack of a configurator, which SNE had deemed essential. He misrepresented the relative cost of the two software packages. He pronounced the J.D. Edwards software a "piece of shit" without knowing enough about it to have an opinion. Of course all these things could have been innocent mistakes. But the more, and the more egregious, a consultant's mistakes, the less innocent they are likely to be. And when on top of this the defendants' efforts to show that they were innocent (maybe negligent, but not deliberate) foundered, there was enough to justify a reasonable trier of fact in rejecting the defense of privilege. That doesn't mean that the jury was right in this case. But its decision was not so unreasonable as to warrant reversal.

AFFIRMED.